EDWARD FLORI *et ux.*, Respondents, *v.* CITY OF ST. LOUIS, Appellant.

January 23, 1877.

1. In an action for damages against a municipal corporation it is not error to introduce as testimony ordinances which establish defendant's possession and control of the house by the falling of which plaintiff was injured.

2. Where the roof of a market-house, by the falling of a part of which plaintiff was injured, was one connected frame, it is not error to admit evidence of notice to defendant of the unsafe condition of another part.

3. The contributory negligence of the husband will not bar the action of the wife, she being the injured party. His negligence cannot be imputed to her.

4. Where there is any evidence to sustain the affirmative of an issue, it is error to take the cause from the jury.

5. A cause will not be reversed because of a refusal to give an instruction which has been substantially given in other instructions.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*E. T. Farish* and *E. P. McCarty*, for appellant, cited: Dill. on Mun. Corp., sec. 790 and cases cited in note 1; Taylor's L. & T., 6th ed., sec. 381; Pibbs *v.* Brown, 2 Grant Cas. 42; Wein *v.* Simpson, 2 Phila Rep. 158; Howard *v.* Doolittle, 3 Duer, 464; Hart *v.* Windsor, 12 Mee. & W. 68; Moffit *v.* Smith, 4 Comst.; Mudford *v.* Brown, 6 Cow. 126; Killeurberger *v.* Foresman, 14 Ind. 476; Joyce *v.* DeGiverville, 2 Mo App. 596; Woelper *v.* City of Philadelphia, 38 Pa. St. 203; City of Dubuque *v.* Miller, 11 Iowa, 583; Smith *v.* City of St. Joseph, 45 Mo. 449; Thomas *v.* Western Union Telegraph Co., 100 Mass. 156; Mahoney *v.* Metropolitan R. R. Co., 104 Mass. 73.

*Daily & Adams* and *H. A. Clover*, for respondents, cited: Meyer *v.* Pacific R. R. Co., 40 Mo. 151; Singleton *v.* Pacific R. R. Co., 41 Mo. 465; Claflin *v.* Rosenberg, 42 Mo. 448; Bowen *v.* Lazalere, 44 Mo. 338; McFarland *v.* Bellows, 49 Mo. 311; Routsong *v.* Pacific R. R. Co., 45 Mo. 236; Dill. on Mun. Corp., sec. 780, notes and cases cited; The State *v.* Wissmark, 36 Mo. 592; The State *v.* King, 44 Mo. 238; Chouteau *v.* Searcy, 8 Mo. 733; McKeon *v.* Railway Co., 42 Mo. 79; Ewing *v.* Goss, 41 Mo. 492; Emerson *v.* Sturgeon, 18 Mo. 170; Mead *v.* Brotherton, 30 Mo. 201; Clarke *v.* Hammerle, 27 Mo. 55; Sawyer *v.* Hannibal & St. Joseph R. R. Co., 37 Mo. 240; Chappell *v.* Allen, 38 Mo. 213; Rose *v.* Spies, 44 Mo. 20; Meyer *v.* Pacific R. R. Co., 45 Mo. 137; Shear. & Redf. on Neg., secs. 27, 52; Winters *v.* Hannibal & St. Joseph R. R. Co., 39 Mo. 474; Sess. Acts 1875, p. 61; Street *et ux. v.* Holyoke, 105 Mass. 82; Savannah *v.* Collins, 38 Ga. 334; Cowley *v.* Sunderland, 6 N. H. 565.

BAKEWELL, J., delivered the opinion of the court.

This was an action by plaintiffs, who are husband and wife, for damages by the falling of a building upon plaintiff Mary.

It appeared from the evidence that defendant owned a building in the city of St. Louis, called the Center Market-house. This building was nearly 400 feet long, by about forty feet wide, extending from Spruce Street, on the north, to Poplar Street on the south, and having Seventh Street on the east and an open space called Lucas Place on the west. The central part of the building was used as a fish-market. From the fish-market, for about 175 feet in each direction, north and south, stretched the roof and walls of the meat-market. The comb of the roof over the meat-market ran north and south, the slope of the roof being towards Seventh Street, on the east, and Lucas Place to the west; but, over the fish-market, the comb of the roof ran east and west, the slope being north and south, and the gable-ends towards Seventh Street and Lucas Place. The space thus roofed and occupied as a fish-market seems to have been about fifty feet square. The meat-market was rented out in butchers' stalls, being divided into spaces of about ten feet for each stall. Plaintiff Edward Flori, on March 13, 1872, the date of the occurrence which is the foundation of this action, was a butcher, renting from the city, and occupying stall fifteen in Center Market, between twenty and thirty feet north of the fish-market and on the west side of the market-house. His wife had been marketing, and, about half-past seven o'clock on Saturday evening, went to her husband's stall to leave her market-basket, that he might bring it home. She had left the front of his stall, and was passing along the meat-market towards Spruce Street, going north, when the roof was lifted from the whole northern part of the market-house, for 175 feet, from the fish-market to Spruce Street; the western wall, on which this roof had rested, fell in for its whole length, and, with others, her husband and herself were

buried under a mass of falling bricks. Her husband was knocked senseless, and did not recover his senses until after he was carried away. She retained her consciousness, but her leg was crushed; the bone was fractured in four places, and it was found necessary to amputate the leg above the knee.

Flori and his wife knew nothing of danger until it was too late. They both swear that they knew nothing of any unusual wind. From the whole testimony of the witnesses on the spot at the time of the occurrence it is clear that the wind was high, but not unusually so, up to the moment of the prostration of the market-house; at which moment, and for some time afterwards, all the witnesses present were in a condition of such mental excitement that they have no clear recollection of the state of the weather. The market-house was a low structure, its walls about twenty feet high; the houses opposite, on the east side of Seventh Street — many of which were three stories high, and old buildings of a cheap construction — were not at all injured by the wind. The blow came, apparently, from the south-west, and carried the roof of the market-house, weighing, as the city engineer testified, 50,000 pounds, into the street, in a north-eastwardly direction. Mr. Tice, a gentleman who has made the subject of storms a matter of special study for many years, was called as an expert, and testified that, from examination of the spot next day, he was satisfied the market-house was blown down by a cyclone; though he said that, in that case, the vortex of the storm must have been too small to give any positive evidence of cyclonic or rotary action. Another witness, an engineer in the employ of the city, professed to trace the course of the wind in a north-eastwardly direction from the south-western limits of the city to the river bank, by injuries said to have been done to buildings which lay in the supposed course of the assumed tornado. It does not appear, however, that any other building was seriously damaged by the storm. The weather was warm for the sea-

son, and rain fell after the wind storm; but there was no evidence of any sudden or marked fall of the thermometer. Altogether, there was evidence from which the jury might have found that the market-house lay in the course of a cyclone; but they might also find that the roof was blown off and the wall prostrated by a very high wind, such as occurs in this latitude always at the equinoctial periods. Unless the testimony of Mr. Tice, as an expert, is to be allowed to outweigh that of all the persons who were on the spot, the weight of the evidence is entirely against the theory of a hurricane, or any extraordinary disturbance of the elements against which human prudence cannot guard.

There was testimony that, for some time prior to the date .of the accident, the roof of the fish-market had been in an unsafe condition; that any high wind would raise it six inches from the wall, at times, and cause the bricks to fall. The wind would sometimes raise the whole roof as far as Spruce Street, and cause the butchers to run from their stalls. The roof of the fish-market, in consequence of representations made by the market-master on the complaint of tenants, was anchored down, in 1871, but the roof over the meat-market was still loose, and liable to be moved by a heavy wind. The roof was constructed with eaves projecting about five feet, and was kept in place merely by its own weight. There was no wall-plate to fasten it to the wall. The wall itself was strong and of good materials, well put together, and, if the roof had remained in place, would have resisted any wind to which it was likely to be exposed. The roof over the fish-market, which had been fastened to the wall, was not disturbed by the wind which carried away the roof from the meat-market to its north. Witnesses were introduced by defendant to show that no ordinary wind could lift this roof, and that it was safe by its own weight; but against this theory was the positive testimony of the market-master, Burchy, and the butchers Lipphardt and Helsiger, and other eye-witnesses, that the

roof, up to the time of the accident, was loose, and constantly lifted by heavy winds, not only at the corner of the fish-market, but north of it, and over the butchers' stalls.

Doyle, the market-master at the time of the accident, and a builder of twenty-seven years' experience, testified, as to the construction of the building, that the principals of the roof were laid in the wall without any wall-plate; and that a wall without a wall-plate cannot be considered a strong job. In answer to a question whether the laying of the principals into the wall without a wall-plate, to secure the roof to the wall, was proper or improper, his statement, as preserved in the bill of exceptions, is: "I never saw it done before; I never saw such a building put up before." Counsel for plaintiffs interpret this as meaning that he never saw a roof put on any building without a wall-plate; and counsel for defendant insist that he meant that he never saw a market-house built.

The building was erected by defendant in 1856, under plans and specifications prepared by the city architect in the office of the city engineer.

There was a verdict and judgment for plaintiffs, and the cause is brought here by appeal.

The plaintiffs asked the following instructions, which were given:

"1. The jury are instructed that, if the Center Market of the city of St. Louis was a public market-house, owned and held and occupied by the defendant, the city of St. Louis, then the said city was by law bound to use ordinary care and diligence to keep the same in a safe condition for the access of persons who should be or come therein for the transaction of business in the said public market-house.

"2. If the jury believe from the evidence that, at the time of the alleged injury, plaintiffs were husband and wife, and that, at the same time, defendant had possession and control of the market-house known as the Center Market, and was then using the same for the purpose of a public market, and that defendant negligently permitted the

said building to be and remain in an insecure, unsafe, and dangerous condition, and liable therefrom to dilapidation and falling and prostration to the ground at said time, and that at said time plaintiff Mary was in said building for the purpose of marketing, and while so therein a storm arose and the wind blew upon said market-house, and by force thereof, and by reason of such unsafe, insecure, and dangerous condition of such building, a portion of the wall of said building was prostrated and thrown to the ground, and the brick and timbers thereof were thrown upon the person of the plaintiff, and she was thereby injured as charged in the petition, they will find for the plaintiff, and assess such damages as they will regard as full compensation for such injuries, pain, and anguish which she may have sustained consequent thereon, unless the jury should further believe that the wall blown down was so cast down by the action of an unprecedented or extraordinary wind storm, which was not reasonable to have been anticipated by the city.''

The following instructions were given at the instance of the defendant.

"1. The court instructs the jury that the power to establish markets and regulate the same is conferred on the city by its Charter, and in the exercise of this power the city is not liable for injuries arising from the fall of a market-house, unless such injuries are directly occasioned by the negligence of the city in failing to provide and maintain a structure, as a market-house, of sufficient strength to resist storms of ordinary force and power; and in this case, if the jury believe from the evidence that the market-house in question was overthrown by a storm of unusual force and violence, or if the jury believe from the evidence that the Center Market-house, at the time of the happening of the injury complained of, was fit and able to withstand a storm of ordinary power, then in either case the jury will find for the defendant.

"2. The court instructs the jury that, unless they believe

from the evidence that the injury complained of was occasioned by the want or lack of ordinary care and diligence on the part of the defendant or its agents, in this behalf, they will find for the defendant.

" 3. The court instructs the jury that, if they believe from the evidence that the immediate cause of the injury complained of was an unusual and violent wind or storm, of such nature that persons in charge of said market-house, and the repairs thereof when needed, would not, by the exercise of ordinary care and diligence, considering the purposes of said building, be led to anticipate, then the jury will find for the defendant."

Defendant asked the court to give the following instructions, which were refused :

" 1. If the jury believe from the evidence that the storm which overthrew the Center Market-house, on March 30, 1872, was one of unusual force and violence, they will find a verdict for the defendant.

" 2. The court instructs the jury that, if they believe from the evidence that the plaintiffs, or either of them, were guilty of negligence or want of care directly contributing to the injury complained of, then the jury will find for the defendant.

" 3. The court instructs the jury that there is no evidence in this case from which they can find the injuries sustained by Mrs. Flori, and complained of herein, were occasioned by any want of care on the part of the city, in the original construction and erection of the Center Market-house, nor in the subsequent maintenance or management thereof by the city, or her agents, for the purposes of a public market.

" 4. The court instructs the jury that the relation of landlord and tenant existed between the city of St. Louis and Edward Flori at the time of the happening of the injury complained of herein, as to the stall in Center Market occupied by said Flori ; and if the jury believe from the evidence that the wife of said plaintiff received the injuries

complained of whilst visiting her husband at said stall in said market-house, and that said Flori, at and prior to said time, was acquainted with the condition of said market-house and its power to resist storms, then the jury will find for the defendant.

" 5. The court instructs the jury that the ordinances of the city of St. Louis read in evidence on the part of plaintiffs do not tend to establish any liability on the part of defendant for the injuries complained of herein.

" 6. The court instructs the jury that, if they believe from the evidence that, at the time of the alleged accident complained of, that portion of the wall of said market-house thrown down was reasonably safe and secure for the purposes for which it was intended and used, they will find for the defendant.

" 7. The court instructs the jury that the burden of proof is on the plaintiffs herein, to establish by evidence, to the satisfaction of the jury, that the Center Market-house, at the time of the happening of the injuries complained of herein, was defective, either in the plan of its construction or the material used therein, to such an extent as to render it unable to withstand a storm of ordinary force and violence ; and, unless the jury so believe, they will find a verdict for the defendant."

1. It is contended that, in the absence of any instruction as to contributory negligence, the second instruction for plaintiff is defective in that element as to plaintiff Mary ; and that, if the nature of the defect in the building was such that her prior attendance in the market must have made it known to her, the jury should have been left to decide whether, if they believed she had such knowledge, she was guilty of negligence in going to this building on the approach of a storm.

There was no evidence whatever that Mary Flori had any knowledge or suspicion of the dangerous character of the

building. We see nothing in the evidence to warrant an instruction as to contributory negligence on her part.

No point is made here as to any other instruction given, and the instructions given for plaintiffs and defendant, taken together, seem to be a correct statement of the law of the case.

2. The first instruction refused for defendant was unexceptionable; but its refusal was not erroneous, since it was substantially given by the court, in another form, in the first instruction for the defendant, as well as in the second for plaintiff.

3. The second instruction declares in effect that, if plaintiff Edward was guilty of negligence directly contributing to the injury, there can be no recovery in this action.

We do not so understand the law. The contributory negligence of the plaintiff will bar a recovery where the plaintiff is the injured party and the recovery is for his benefit. But here the husband is merely a formal party, the cause of action belonging to his wife. Under our law (Acts 1875, p. 60), "any personal property, including rights in action, * * * which has grown out of any violation of the personal rights" of a *feme covert*, is her separate property, and under her sole control, and is not liable for the debts of her husband. The contributory fault of the injured party, or of some one whose fault is attributable to him, may excuse the defendant in an action of this character, but the contributory fault of the plaintiff of record is no answer to the claim, unless he is the sole person to be benefited by the recovery.

4. There was no error in refusing the third instruction for plaintiffs, unless the court also erred in refusing the instruction asked by defendant, at the close of plaintiffs' case, in the nature of a demurrer to the evidence. That these instructions were properly refused is manifest from the statement of the evidence already made. The jury were the

judges of the weight of the evidence, and it is held in Missouri to be error to take a case from the jury if there be any evidence to sustain the issues.

5. The fourth instruction was properly refused. Mrs. Flori had been in front of her husband's stall, and handed him her marketing to take home. At the time of the accident she was returning; had left the front of the stall, and was in the middle of the upper part of the market, and about half-way between the fish-market and the north end. The fact that her husband had a stall in the market-house imposed upon her no special duty of inquiring into the safety of the building, and placed her in no worse position as to a right to recover for any damage done to her whilst marketing in the building than that of any other woman frequenting it for the same purpose. Her husband's knowledge was not her knowledge, and his negligence is not to be imputed to her.

6. The fifth instruction, that the ordinances of the city read in evidence do not tend to establish any liability on the part of defendant, was properly refused. These ordinances establish material facts in the case denied by the answer, to wit, the possession and control of the market-house, by defendant, as a public market-house, at the time of the accident. Taken with the other evidence, they tended to establish a liability of defendant. The instruction, if understood to mean that the mere fact that the city had control of the market at the time of the accident would not, of itself, establish its liability for damage done by the fall of the building, was wholly unnecessary, for the instructions given sufficiently negative any such absurd idea. If the instruction was susceptible of the meaning that the facts which these ordinances established were not important links in the chain of evidence tending to establish liability on the part of the city, it could only mislead.

7. The next instruction might be understood as a direction to the jury to disregard evidence of the condition of

the roof, and of the safety of the wall after the roof was gone. So understood, it was bad. If understood of the reasonable security of the part of the market-house destroyed, the point was sufficiently covered by the instruction given.

8. Instruction numbered seven leaves out of view the duty of the city to maintain the building in a reasonably safe condition. The materials might have been good, and the original plan of the structure unobjectionable, and yet the different parts might, in course of time, have become shifted and displaced, or disconnected, so as to render the building dangerous. The bricks and the wood were actually sound enough at the time of the accident, as plaintiff showed. The instructions given were a sufficient declaration of the law of the case; and when this is so a cause will not be sent back for new trial merely for the refusal of an instruction which, if sound, is a mere reiteration of legal principles already sufficiently set forth in the declarations of law given.

9. Plaintiffs offered in evidence a report of Market-master Burchey to the city comptroller, made in February, 1871, setting forth that the roof of the fish-market in Center Market required to be braced, as the strong winds had moved it up nearly half a foot. This evidence was objected to as incompetent and irrelevant, but was admitted. We think the testimony was relevant and was properly admitted. It is true the roof of that part of Center Market called the fish-market did not blow off; but the roofs were connected and the building was one. The comptroller was shown to be the city officer having control of the markets, and there was evidence that, when the roof of the fish-market was raised by the wind, the whole roof for 175 feet, to Spruce Street, was moved. This may have been notice to the city of the condition of the whole roof, for the whole roof was one connected frame. It was certainly not for the court, on the evidence before it, to say that the insecure condition

of the roof over the fish-market could have no effect upon the roof connected with it to the north, and no effect upon the safety of the building.

Both the city and the plaintiffs have been efficiently represented, and the objections taken by counsel for defendant have been ably urged before us in written and oral argument. We do not discover any error in this record, however, for which the judgment should be reversed, and it is affirmed. All the judges concur.