[No. 6772.   Decided January 17, 1908.]

WILLIAM M. RIDPATH, *Appellant*, v. SPOKANE STAMP WORKS, *Respondent*.[1]

LANDLORD AND TENANT—NUISANCE—UNLAWFUL USE BY TENANT—EVIDENCE—SUFFICIENCY.   The evidence is sufficient to show that the operation of a stamp mill in a leased storeroom, on the ground floor of a hotel building, is a nuisance which the landlord has a right to have abated by termination of the lease, and it is error to grant a nonsuit in his action of forcible entry and detainer, where it appeared that the operation of the machinery severely shook and jarred the building to such an extent as to greatly annoy the guests everywhere in the hotel, and prevent the leasing of certain rooms.

Appeal from a judgment of the superior court for Spokane county, Yakey, J., entered November 20, 1906, upon granting a nonsuit at the close of plaintiff's testimony, dismissing an action of forcible entry and detainer, after a trial before the court without a jury.   Reversed.

*Henley & Kellam*, for appellant.

*John C. Kleber*, for respondent.

[1]Reported in 93 Pac. 416.

PER CURIAM.—The appellant is, and was at the time of the making of the lease hereinafter mentioned, the owner of a four-story brick block in the city of Spokane. The lower or ground floor rooms were designed and used for storerooms, and the other floors were designed for and used as a hotel. It is conceded that the hotel is elegantly and expensively furnished, and has at all times been conducted as a first-class hotel. On the first day of July, 1906, appellant leased to the respondent one of the storerooms on the first floor of the hotel, and respondent went into possession thereunder. The lease is not introduced in evidence, but it is admitted that it was executed, and its terms are undisputed. The complaint alleged, that the lease contained no express restrictions or provisions as to noise, confusion, shaking, or jarring of the building, and that at the time of and prior to the making of the lease it was represented by respondent to appellant that the storeroom was to be used only as a display and salesroom for its manufactured products, and that there would be created no noise, nor would there be anything about the conduct of its business to disturb in any manner the guests or patrons of said hotel. This allegation was denied by the answer, and it was claimed that the appellant knew that the respondent intended to operate a stamp mill in said building, and consented to its operation. On this question the appellant, Ridpath, testified that it was stipulated and agreed that there should be no machinery placed in the room that would in any manner be offensive or create a noisy disturbance.

It was shown that, shortly after the execution of the lease, the respondent did install in the leased room a system of machinery propelled by electric power, and that the operation of such machinery created excessive noise, and the jarring, shaking, and vibration of said building. The appellant, after complaining to respondent of the discomfort and injury the operation of said machinery was causing him, gave respondent the notice required by law and brought this action under the

21—48 WASH.

unlawful detainer statute.   On the conclusion of the plaintiff's testimony, the court sustained defendant's motion for a nonsuit, holding that there was not sufficient testimony to go to the jury upon the question of nuisance.   Judgment was rendered against plaintiff, dismissing the action, and from this judgment plaintiff appeals.

Many assignments of error are made in relation to the ruling of the court in sustaining objection to the testimony offered by the appellant.   But without entering upon a discussion of these alleged errors and saying merely in passing that the court seemed to have adopted a very strict rule in relation to the proof offered by the appellant to sustain the allegations of the complaint, we think, on the merits of the case, that the court erred in taking the case from the jury and granting the nonsuit, and that there was sufficient testimony to have been submitted to the jury on the question of whether or not the operations of the respondent constituted a nuisance within the meaning of the law.

For the purposes of this case it must be conceded that there was no permission given to the lessee to operate the machinery in the manner in which it was operated, there being no testimony offered by the respondent on that subject.   There was testimony by about a dozen witnesses, some of the guests in the hotel, others employees therein, by tradesmen in the neighborhood, and by the owner of the hotel, that the machinery created such a noise and quivering in the rooms of the hotel, including the parlor, that it was very annoying to the guests and occupants.   Mr. Herman Cominsky testified that the stamp when dropping created a very heavy noise—as he described it, like a large hammer dropping on a piece of iron—and that the vibrations were very strong, so much so that they shook the building.   Mr. Lockheart's description of the noise made by the machinery was as follows:   "It makes quite a buzzing and roaring noise.   Reminds one to some extent of being on the street cars when air brakes are running."   He also testified that the noise of the hammer dropping was like

the hammer dropping on metal; that the hotel outside of this was a very quiet hotel, and desirable for roomers, and that the machinery made a buzzing and disagreeable noise for guests to endure. Mr. Bernheart, who lived in the hotel, also testified that the machinery made a great racket and noise and disturbed the guests. He was a clerk in the office of the hotel, and testified that it disturbed him in the office in the performance of his work; that the rumbling of the noise and vibration and the hammer was very loud, and he could not do his work as effectively in the office while the machinery was in operation as when it was not; that it could be heard all over the house and in all the rooms in the house; that he had had complaints from all the guests, and on several occasions had to move people out of certain rooms where the noise was so loud that it could not be endured; and that they had lost the leasing of the rooms on that account; that it was worse on the second floor and in the parlor, but that the vibrations reached throughout the hotel, the witness saying: "It does vibrate the building. In fact, you cannot stay in the rooms on the second floor where this is without getting the jars, not only from the beds and chairs, but all over the rooms, and even standing on the floor;" that he could not use the parlor while the machinery was going on; people could not sit there, and that it was not fit for use at all, and that he had had to let people go out of it on account of this noise. One witness testified that the vibration was of such force that it affected everything in the room, and that as you stood on the floors you could feel it go through you. The testimony of the appellant Ridpath was in part as follows:

"Question. State what occurred after these people took possession of this room in your building. Answer. Sometime—I think it was in August—I went around to the hotel office and I heard a terrible noise in the building and I went to see what it was, and discovered it was machinery running under the floor of the parlor. Mr. Bernheart was with me at the time and we rushed down to the street, and went into the

store and Mr. Bernard was there, and I said, 'You must stop that, it will not do at all, and it will drive everybody out of the hotel.' And he said he would take it down and I went out."

He also testified that on Sprague street he had heard the falling of the hammer distinctly, and described the noise as being like that made by a separator of a threshing machine; testified that it shook the glassware on the chandeliers; that you could feel the vibrations of it on your body anywhere in the hotel; that it created an unnatural and unpleasant condition; that it sometimes ran for several hours in the day and sometimes for a few minutes, and that it jarred the building and was so severe that the floors quivered so that no one would want to stand on them. Mrs. Green, a roomer in the hotel, stated the noise produced by the machinery was loud enough to annoy anyone, and she was annoyed to such an extent that she had complained about it to the clerk in the building. She stated that it was severe enough to annoy one "dreadfully," and that it annoyed her to such an extent that several times she had dressed and gone out of her room to get rid of it; also stated that she was a woman in good health and not nervous. When asked to describe the noise she said that it reminded her very much of the first shock of the earthquake in San Francisco; that people were not able to engage in conversation in the parlor, nor carry on conversation during the time the machinery was running; that it would be impossible to do so; and without specially reviewing the testimony, there is testimony of several other witnesses to the same effect. If this testimony is true, and it stands now uncontradicted, not being shaken in any way by the cross-examination, the operation of the machinery unquestionably under all authority constituted a nuisance which the owner of the building would have a right to have abated.

The judgment of the lower court is therefore reversed, with instructions to overrule the motion for a nonsuit and to proceed with the trial of the cause.