OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1915.

---

(*Continued from Volume 266.*)

---

## SAMUEL M. KENNARD et al., Appellants, v. GOTT-LIEB EYERMANN et al.

### Division Two, February 15, 1916.

1. **PUBLIC STREET: Park Carriage Drive.** A conveyance to a city of a strip of ground fifty feet wide along an established park to be used as a "carriage avenue" of the park "for all such carriages and teams as by regulations and rules governing the park may be allowed to run in same," was a dedication of the strip for highway purposes; and a further clause in the grant subjecting it to the "immediate government of the park commissioners" means such regulation as may be exercised by them in the control of a public street, and nothing more; and being dedicated to street purposes, and being accepted and since uniformly regarded by the city as a street, the strip's status as a street is fixed.

2. **——: ——: Evidence of Dedication.** The establishment by the city of public improvements on such "carriage avenue," such as pavements, lights, sewers and water mains, constitutes evidence of its permanent public character as a street, as do also the knowledge of and acquiescence in such improvements on the part of the dedicator.

3. ——: ——: **For Use as Boundary of Benefit District.** At any rate, such "carriage avenue" has been so dedicated as a street as to authorize the city to so consider it in fixing the boundary of a benefit district for special taxation, in pursuance to a charter provision which declared the boundary line of such district should be midway between the street to be improved and the next parallel street.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*Barclay, Orthwein & Wallace* and *Smith & Pearcy* for appellants.

(1) (a) In a dedication to the public of property by an individual, the law construes the grant strictly as against the public. Spires v. Los Angeles, 150 Cal. 64; Hopkinsville v. Jarrett, 156 Ky. 777, 50 L. R. A. (N. S.) 465; Riverside v. MacLean, 210 Ill. 308, 66 L. R. A. 288; Jones v. Jackson, 104 Miss. 449. (b) The public under a dedication acquires only a right to use the property given to it for the purpose specified in the dedication. Cummings v. St. Louis, 90 Mo. 264; Refining Co. v. Elevator Co., 82 Mo. 125; Williams v. Plank Road Co., 21 Mo. 582; Ferrenbach v. Turner, 86 Mo. 419; Gaskins v. Williams, 235 Mo. 563; Board of Regents v. Painter, 102 Mo. 471; Goode v. St. Louis, 113 Mo. 257; Jones v. Jackson, 104 Miss. 449; Park Comrs. v. Ward, 248 Ill. 309; Young v. Landis, 73 N. J. L. 266; Poole v. Rehoboth, 9 Del. Ch. 201. The public has no right to change a specified, limited and defined purpose specified in a grant so as to subject the property to a use for a different purpose. Mulvey v. Wangeheim, 23 Cal. App. 271; Price v. Thompson, 48 Mo. 361; Riverside v. MacLean, 210 Ill. 308, 66 L. R. A. 288; Seward v. Orange, 59 N. J. L. 331; Hopkinsville v. Jarrett, 156 Ky. 777, 50 L. R. A. (N. S.) 467. (2) (a) A park and park use

have been defined in the following cases: State ex rel. v. Schweikerdt, 109 Mo. 496; Bennett v. Seibert, 10 Ind. App. 369; Ehmen v. Gothenburg, 50 Neb. 715; People ex rel. v. Green, 52 How. Pr. 440. It is a place of amusement, and roadways are necessary therein. Driveways in a public park are common and, like walks and bridle paths, are not only not inconsistent with the use of a park as such, but are a part of the common and ordinary means by which a park is used by the public. In the case of a large park, such as Forest Park, paths and driveways are essential to their satisfactory use. The ordinary use by the public of paths and driveways through a public park is consistent with and incidental to the purpose of a park and is a park use and not a use as a street or public highway. A park road is such a park use. Buffalo Co. v. Hoyer, 214 N. Y. 247. (b) The county of St. Louis acquired this strip of land from Griswold in 1876 under a grant which was accepted by the county. By the terms thereof the board of control (the commissioners of Forest Park) had control of the strip, and these two and one-half acres were by the grant incorporated into and became a part of Forest Park. The grantor reserved, however, an easement which attached to the property on the north of the road, giving it access, light and air and outlet and inlet to such property and right of temporary stoppage in front thereof, but such rights were under the regulations and rules governing the park, as promulgated by the commissioners of Forest Park. This was the only limit placed upon the use of the strip as a park road by the grantor. Lands may be dedicated for park purposes subject to a private easement of access, light, and air, and such easements are not antagonistic to the rights of the public in such lands for park purposes. Buffalo v. Hoyer, 214 N. Y. 246. A street is a public highway and is open for unrestricted use to the public. A street is open to public traffic of all

kinds. Every person has a right to pass over the same. No one can be excluded. This is not the case here. Even the travel to and from the houses fronting on the north of the road can be regulated, and any kind or all other kinds of traffic can be excluded. By ordinance and by the regulations of the Park Commissioner the travel is now regulated and has been so regulated for many years. A street use and a park use are distinct uses. Bennett v. Seibert, 10 Ind. App. 379; Pickett v. Mercer, 106 Mo. App. 696; Riverside v. MacLean, 210 Ill. 325; Board of Education v. Detroit, 30 Mich. 505. (3) This road is not a street, but a park road, and cannot be used as a street. It cannot be used to fix the south boundary of the assessment district for improving McPherson avenue. Art. 6, sec. 14, City Charter; Collier v. Paving Co., 180 Mo. 390; Buffalo Co. v. Hoyer, 214 N. Y. 236; Commonwealth v. Boston, 135 Mass. 551. (4) The strip of land having been acquired by the county of St. Louis as and for a park road and having been incorporated into the boundaries of Forest Park as a part thereof, and the city having acquired the rights of the county under the scheme of separation, no amount of user by the public of this park road could divest the city as trustee for the public of its right acquired for park purposes and make it a street. Limitation does not run against the city in this way. Sec. 1886, R. S. 1909 (G. S. 1865, sec. 7, p. 746); Laclede-Christy Co. v. St. Louis, 246 Mo. 460; State ex rel. v. Doniphan, 169 Mo. 615. Use of a park road by the public for any length of time does not change the character of the use or title. Such use is permissive. Cohn v. Parcels, 72 Cal. 367, 370; Hamilton v. Morris, 18 Upper Canada Common Pleas 245, 249; Collier v. Paving Co., 180 Mo. 362. No length of use of a private road will make it a public highway. Bradford v. Fultz, 149 N. W. 929; Princeton v. Gustavson, 241 Ill. 566; Weldon v. Prescott, 187 Mass. 415.

*Schnurmacher & Rassieur* for respondents.

(1) "A street is a road or public way in a city, town or village. A way over land set apart for travel in a town or city is a street, no matter by what name it may be called. It is the purpose for which it was laid out and the use made of it that determines its character." Elliott on Roads and Streets, sec. 19. (2) The word "street" is a generic term and is broad enough to include boulevards and other restricted public ways and streets like Lindell avenue, which, though a part of the park, are nevertheless used for public street purposes. Paige & Jones on Taxation by Assessment, secs. 307, 401; Park Comrs. v. Farber, 49 N. E. (Ill.) 433; Bancroft v. Bancroft, 61 Atl. (Del.) 689. (3) Lindell avenue was dedicated and has always been used as a "street" within the meaning of section 14, article 6, of the charter of St. Louis. Steinacher v. Gast, 89 S. W. (Ky.) 481; Collier v. Pav. & Supply Co., 180 Mo. 387. (4) It is part of the Forest Park, but, nevertheless, a street in the park and it must always be used as a street. The city may regulate its use as part of the park, just as the city may regulate the use of all streets; but the regulations must be reasonable; the city cannot regulate away the rights of adjoining owners or of the public in this strip as a street. (5) The use of the sub-soil at the request of adjoining owners, for general municipal purposes, is a strong circumstance, showing that the strip has been used as a street, even though it is part of the park. Elliott on Roads and Streets, sec. 20. (6) The improvement of the street by adjoining owners under permit from the Board of Public Improvements, their conveyances naming Lindell avenue as the street on which their lots front, and their use of it for general street purposes, estop the Forest Park Improvement Association and its

grantees from questioning that it is a street. People v. Underhill, 39 N. E. (N. Y.) 333; Hannibal v. Draper, 15 Mo. 634; Rutherford v. Taylor, 38 Mo. 315.·

WALKER, J.—This is a proceeding to enjoin the collection of special tax bills issued by the city of St. Louis to the defendant G. Eyermann & Bro., contractors, who reconstructed Waterman Avenue between Kingshighway· and Union Boulevard, public streets of said city.

The charter of the city of St. Louis provides how the benefit district which shall bear a portion of the cost of such improvements shall be fixed; section 14, article 6, of the charter in relation thereto being as follows:

"The districts herein referred to shall be established as follows: a line shall be drawn midway between the street to be improved and the next parallel or converging street on each side of the street to be improved, which line shall be the boundary of the district," etc.

Waterman Avenue, on which the work was done, runs from east to west and is parallel with and quite a distance north of Forest Park.

Plaintiffs, who were the owners of property fronting on Portland Place (a private "Place" within the benefit district), attack the validity of the tax bills and claim that the Board of Public Improvements, in determining the amount of tax required to be paid by the respective lots in the benefit district, failed to include the entire area legally subject to the tax, and therefore the bills against their lots are for excessive amounts.

On the north the board drew the line midway between Waterman Avenue and the next street north. This plaintiffs concede. On the south the board drew the line midway between Waterman Avenue and Lindell Avenue, claimed by the board to be the next street

south. But plaintiffs claim that Lindell Avenue is not a street within the meaning of the charter, and that the board should have drawn the line midway between Waterman Avenue and Berthold Avenue, or possibly Clayton Avenue, a street running through the park, and that the district should thus have included a large part of Forest Park.

Plaintiffs concede that the contract was properly let and the bills were otherwise properly issued. The only ground urged by them is as to the validity of the board's action in fixing the taxing district.

The contract for the work was let and the special tax bills were issued in 1910 and the status of Lindell Avenue as of that date must be determined. Its history is as follows:

William D. Griswold was the owner of a tract of eighty acres lying immediately north of Forest Park, bounded on the east by Kingshighway and on the west by Union Avenue. In 1876 Griswold conveyed to the county of St. Louis a strip of fifty feet wide off the south side of said eighty acres, adjoining the north line of Forest Park and extending from Kingshighway to the St. L. K. C. & N. railroad. This strip now is Lindell Avenue, the street in question.

The deed to the county was for the following uses and purposes: "To have and to hold the same to said St. Louis County for the uses and purposes following, viz.: That same shall be incorporated into and be held, improved, used and controlled as a part of Forest Park and shall be subject to the jurisdiction and government of the commissioners of Forest Park in same manner and to same extent as pertains to the general territory and property of same. That said board of commissioners shall cause to be constructed a carriage avenue over the premises described, embracing part of the present north line of the said park adjoining the land hereby conveyed, such carriageway to be not less than fifty feet in width extending from

Kingshighway to the line of said railroad, the same for the width of fifteen feet to be completed after the best manner of the other carriage avenues of said park, and for the balance of width to be graded in conformity with the said fifteen feet of width so as to form in connection with same a common avenue, that they shall grade a foot walk along the north side of said avenue corresponding with the level or elevation of same and fronting the said tract of eighty acres, and during the current winter or coming spring, plant shade trees along the curbing or border of said foot walk of such kind and in such distances as to the said commissioners may seem expedient and in harmony with the general improvement of the park. . . . And also said Griswold and persons holding under him, owners or occupiers of the land and lots fronting upon said avenue and foot walk, shall have outlet and inlet from and into their premises and right of temporary stoppage in front thereof, for all such carriages and teams as by the regulations and rules governing the park may be allowed to run in the same, and that the streets which may be laid out upon the said eighty acres may enter and be connected with said avenue, and that said streets shall be accessible through the same for all such carriages and teams.''

Upon the separation of the city and county, the strip passed to the city.

Griswold owned the tract until May, 1887, when he conveyed it to the Forest Park Improvement Association; the deed specifies the metes and bounds of the entire eighty-acre tract. In May, 1888, the grantee platted the tract and laid it out in blocks and lots. The association also dedicated to the city, for the same uses, a short strip fifty feet wide, adjoining the railroad tracks, and extending the strip dedicated by Griswold through to Union Boulevard—thus making a continuous strip from Kingshighway to Union Boulevard. This fifty-foot strip from Kingshighway to

Union Boulevard is designated on the city plat as the "Park Road." The part dedicated parallels the railroad tracks and runs diagonally into Union Avenue. Subsequently the city condemned as a street a strip fifty feet wide, extending the Griswold strip on a straight line from its western terminus to Union Boulevard, and the strip west of Union Boulevard was also acquired for uses similar to the uses created by Griswold, and the same was similarly improved and now makes one continuous straight street from Kingshighway to Skinker Road, although the diagonal piece connecting Union Boulevard with Lindell Avenue is also used as a street.

Soon after the improvement was completed the property was placed on the market and the association disposed of the lots for residence purposes, and all lots fronting on this strip were described as having so many feet fronting on Park Road. In 1903 the name of the street was changed, by ordinance, from Park Road to Lindell Avenue, and since the plat was filed, in all conveyances of lots fronting on this street, they were described as fronting on Park Road (prior to the change of name), and thereafter as fronting on Lindell Avenue.

After the association acquired the property, under permit from the Board of Public Improvements it installed a main sewer, water and gas mains therein. The street was also paved, and from time to time, as lots were sold, residences were erected and the owners were granted permits by the sewer department to connect with this main sewer, and by the street department to connect with the water and gas mains and to construct granitoid sidewalks in front of their premises.

In 1889 the city refunded to the association the amount expended by it for the water main and took it over as part of its system, and also the sewer main as

part of the district sewer and relieved the property from special taxation for district sewer purposes.

The city also installed lamp posts for street lighting and fire plugs for fire protection. The lots have all been sold and improved with residences. The houses are numbered, as on other streets.

In the plat-books in the Assessor's office, in the Street Department and in the Special Tax Department, the strip has always been carried and treated as a public street.

When Union Boulevard was reconstructed, Lindell Avenue was treated as a public street and the special taxes were issued on that basis. When Kingshighway, extending north of Lindell Avenue, was widened, Lindell Avenue was again treated as a public street and the tax bills were issued on that basis. At no time in any of these departments has Lindell Avenue been treated otherwise than as a public street.

The Police Department patrols this street as any other, although the park itself is patrolled only by employees of the Park Department. There was evidence that Lindell Avenue was kept in repair only by the Street Department, but there also was evidence that the Street Department did so only at times when the Park Department was short of funds and that the Park Department at other times also made repairs.

Lindell Avenue has always been sprinkled by the city, as other streets; the advertisements and contracts call for its sprinkling, and the property fronting on the street has always been charged therefor by special taxation, the same as other property fronting on streets in the city of St. Louis. For a number of years the street has been oiled, which eliminates sprinkling, but the sprinkling taxes are levied as before to pay for the oiling instead of sprinkling.

The street has at all times been used for every purpose for which a public street may be used, except that after 1907 or 1908 the Park Commissioner ordered

that no heavy traffic be permitted on the street, and since that time an effort is made to keep off heavy traffic, except such as is necessary to supply the residences on the street with coal, ice, building material, etc. Such heavy traffic is now and has always been permitted. There was evidence also that only heavy traffic intended for the residences on the street was permitted prior to 1907, except during the World's Fair period.

Lindell Avenue is a continuation of Lindell Boulevard, an established street, long in use before Lindell Avenue was dedicated, and excepting a slight jog at Kingshighway) it makes one continuous street from Grand Avenue to Skinker Road—a distance of three or four miles.

Upon the facts above set forth the circuit court found that Lindell Avenue is a street within the meaning of the charter and that the Board of Public Improvements was right in fixing the midway line between Lindell Avenue and Waterman Avenue as the southern boundary line of the benefit district. From the judgment dismissing the petition, plaintiffs appealed to this court.

*Is Lindell Avenue a Public Street?*—The sole matter at issue is whether Lindell Avenue, between Kingshighway and Union Boulevard, is a street within the meaning of the charter; if so, then the judgment of the trial court which denied the right of relators to the injunctive process herein prayed for, should be affirmed; otherwise, reversed.

The title to the strip of ground now designated as Lindell Avenue, between the limits stated, was conveyed to St. Louis County (now city) by William D. Griswold in 1876 with stipulations as to the use to which the ground was to be put by the grantee, viz., in general terms, that it was always to be used as a "carriage avenue." While it was to be a part of Forest Park, it was to be constructed and maintained as

a carriage avenue, by which the grantor meant, not
merely a passageway for carriages, but such a high-
way as would afford the occupiers of lots fronting on
said avenue egress and ingress to and from their
premises "for all such carriages and teams as by the
regulations and rules governing the park may be al-
lowed to run in same." This, as well as other terms in
the grant, is indicative of a purpose to dedicate for a
public use. [Hannibal v. Draper, 15 Mo. 634.]
There is no claim that the city, which became invested
with the control of the street as a successor to the
county upon the adoption of the Scheme and Charter,
has ever attempted to divert the use of same to other
purposes than those designated by the grantor, but
on the contrary, all the official acts of the municipal-
ity, in whatever department exercised, have been in
recognition of and in conformity to the terms of the
deed of grant. These are set forth in detail in the
statement and their repetition would serve no useful
purpose. The fact that the strip granted is by the
terms of the deed subjected to the "immediate gov-
ernment of the commissioners of Forest Park" means
such regulation as may be exercised by the commis-
sioners in the control of a public street—nothing more.
For such purpose was the grant made, and an attempt
to exercise other control by the park commissioners
would defeat the very purpose of the dedication. In
short, the street, or as now designated, Lindell Avenue,
must always be open to the public as a highway under
the limitations stated; and the fact that it remains a
part of the park detracts in nowise from its use as a
street, nor is it in any manner inconsistent with its
defined character as such. It is too well established
to admit of argument that land dedicated for street
purposes cannot thereafter be diverted for park pur-
poses. Under any reasonable construction of the
grant, therefore, the strip must remain a highway,
and it was so accepted and has uniformly been so re-

garded by the city. This fixes its status so far as
municipal affairs are concerned. [Collier Est. v. Pav-
ing & Supply Co., 180 Mo. l. c. 387.] Lindell Avenue is
not the only instance of the establishment of a public
street in Forest Park. There are others, not neces-
sary to be enumerated, which, upon their dedication,
became permanent in their nature, free from change
by the park commissioners, but to an extent subject to
their control, as is that part of Lindell Avenue in ques-
tion, but nevertheless subject to the general control of
the city; and unlike drives or roads, which may be
abolished or changed as the judgment or taste of the
commissioners may dictate.

It was contended that the city had used the avenue
for general street purposes; this, if true, and in viola--
tion of the terms of the grant, would avail appellants
nothing, because evidence in support of this conten-
tion would simply serve to show a further dedication
by the city to public use. The establishment of per-
manent improvements on said street by the city in
accordance with the demands of modern municipal life,
such as paving, lighting, sewering and placing water
mains therein, in nowise conflicts with the terms of
the grant, but constitutes further evidence of the per-
manent public character of the street. The knowl-
edge and acquiescence of the grantor in this work is
further proof of his intention to dedicate this street
for public use in all that the term implies. It is estab-
lished that the intention of the owner to dedicate for
a public use may be shown in various ways, and his
approval of the city's action in this case may well be
classified as one of same. [Brinck v. Collier, 56 Mo.
l. c. 165; Price v. Thompson, 48 Mo. l. c. 365.]

After all, the real question is not what is seem-
ingly admitted, viz., has Lindell Avenue been estab-
lished and dedicated as a public street; but has it been
so dedicated as to authorize the Board of Public Im-
provements to designate it as a boundary in the deter-

mination of a special taxing district. That it has been established as a public street for general purposes, both by private deed and public recognition, the facts sufficiently show. This character having been established, the Board of Public Improvements, under the fourth paragraph of section 14 of article 6 of the former charter of the city of St. Louis, is authorized to designate it as a boundary determinative of a district for special taxation.

Arguments as to strict construction of a grant and what technically constitutes a dedication; what is "park use;" or the extent of the separate government of the Forest Park commissioners, as contradistinguished from the general control of the city of St. Louis; and the claim that the grantees under the Griswold deed must be confined literally to the terms of same, have but little substantial weight in the face of the many cogent facts to establish the dedication of the strip as a street and its recognition and adoption as such by the city.

We have reviewed the numerous cases cited and discussed by counsel for appellants as sustaining their contention, but find no substantial merit in them. We therefore hold that the judgment of the trial court denying the right of appellants to the injunctive relief prayed for should be affirmed, and it is so ordered. All concur.