DAVID J. HERRELL and LIZZIE HERRELL v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—23 S. W. (2d) 102.

Court en Banc, November 15, 1929.

*E. T. Miller, A. P. Stewart* and *C. H. Skinker* for appellant.

*Foristel, Mudd, Blair & Habenicht* for respondents.

RAGLAND, J.—The plaintiffs sue for the wrongful death of their son Roy Herrell, an unmarried minor, asking the $10,000 penalty allowed by Section 4217, Revised Statutes 1919. The son was an able-bodied young man over nineteen years old, living with his parents and working on their farm in Jefferson County. In January, 1924, he was driving his father in the latter's Ford coupe to a nearby town where the father intended to pay his taxes. The automobile was struck by one of the defendant's freight trains at a public highway crossing in the unincorporated village of Imperial, and as a result the son received injuries from which he died and the father was badly hurt. This suit was filed in the city of St. Louis. In a jury trial the plaintiffs were awarded the full $10,000, and the defendant has appealed.

The father also brought a separate action for his own injuries and recovered a judgment which was recently affirmed by this court, the cause being entitled David J. Herrell v. St. Louis-San Francisco Railway Co., 322 Mo. 551. The facts are fully stated in this other case. The evidence, the instructions and the assignments of error in the two proceedings are so much alike that we shall, without further statement, treat the ruling in the father's case as decisive of all questions presented here, except one.

The respondents submitted their case to the jury on issues as to the appellant's primary negligence and also under the humanitarian doctrine. The appellant sought by its answer to plead as a defense the contributory negligence of the father, viz., negligent failure to look and listen for the approach of the train and to warn his son. The respondents moved to strike out this plea, alleging it constituted no defense to the plaintiff's cause of action.

The court sustained the motion, and at the close of the testimony also gave an instruction for respondents on the measure of damages, permitting them to recover up to the $10,000 maximum fixed by the statute.

Appellant assigns error in the ruling on the motion and in the giving of the instruction, on the grounds that the contributory negligence of the father would have been and was a good and complete defense against its alleged primary negligence: (1) as affecting both respondents, the father and the mother; (2) or, if not that, it was good at least as to the father, limiting the recovery to the mother's one-half interest in the judgment, a maximum of $5000. This question, or these two questions really, are the only ones remaining in the case.

I. The statute, Section 4217, was enacted in 1855. From the beginning this court has held that contributory negligence, generally speaking, is a defense to an action thereunder, absent pleading and proof bringing the case within the humanitarian doctrine. We have held that contributory negligence of the deceased is a defense; that contributory negligence of both parents suing for the death of an unmarried minor is a defense; and that contributory negligence of the surviving parent is a defense where he or she prosecutes the action alone. But we have never expressly held that the contributory negligence of *one* parent where *both* sue for the death of an unmarried minor is a defense, either to the entire cause of action or to the extent of the alleged interest of the parent whose negligence concurred in causing the death. The question is one of first impression.

The defense of contributory negligence is grounded on the assumption that a court of law cannot apportion the *damages* arising from an injury caused by the co-operating negligence of both parties. [20 R. C. L. 102, sec. 88.]

"The maxim, that no one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, has no application. . . . The doctrine of contributory negligence does not rest on that maxim. Different grounds for the doctrine have been stated by judges and text-writers, but the most satisfactory is that the law will not undertake to apportion the consequences of concurring acts of negligence; and so when injury is caused by the concurring negligence of two or more persons, each is liable for all the damages thus caused, and for the same reason when damage is caused by the concurring negligence of both the plaintiff and defendant, the former cannot recover at all." [McKay v. Syracuse R. T. Ry. Co., 208 N. Y. 359, 363.]

In an action under Section 4217 no question of apportioning damages can arise: such an action is not for damages, but for penalty—assessed as a punishment for the commission of a wrongful act which results in death. In some instances the penalty is recoverable by persons who presumptively sustained pecuniary loss through the death; in others it is not. When it goes to persons sustaining loss, its serving in a measure as compensation— damages—is purely incidental. The recovery in its entirety is penalty: not damages. [Grier v. Railroad, 286 Mo. 523, 228 S. W. 454.] The allowance of the defense of contributory negligence in such an action is to relieve the wrongdoer against whom the statute is leveled of the consequences of his wrongful act—the payment of the penalty, merely because the act of another concurred with his in causing the death.

The statute recites:

"And such corporation, individual or individuals or such officer, servant, agent, employee, master, pilot, engineer, or driver, may show as a defense that such death was caused by the negligence of the deceased. In suits instituted under this section, it shall be competent for the defendant, for his defense, to show that the defect or insufficiency named in this section was not of a negligent defect or insufficiency, and that the injury received was not the result of unskillfulness, negligence or criminal intent."

Such defenses would seem obvious without being mentioned in the statute: the fact that they were designated seems to indicate that the lawmakers intended them to be preclusive: and there can be no question as to their power to so limit the defenses as to exclude that of contributory negligence. [Hines v. McCullers, 121 Miss. 666, 673.]

This court's construction of the statute permitting the defense of contributory negligence in certain cases is of too long standing to be set aside; but there is no rational ground for broadening it so as to include cases not now covered by our precedents.

We now turn to the case at hand. The applicable portion of the statute is as follows: "which" (the penalty) "may be sued for and recovered, . . . if such deceased be a minor and unmarried . . . by the father and mother, who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor." Under settled construction, this language discloses "a legislative intent to vest the right of action in the parents jointly, with the incident of survivorship in favor of either parent in event of death of the other before judgment. [Senn v. Railroad, 124 Mo. 621, 626, 28 S. W. 66; Chawkley v. Railroad, 317 Mo. 782, 297 S. W. 20.] The cause of action, the right to the penalty, so vested in both parents is with respect to their ownership of it analogous to an estate by the en-

tirety. Neither owns an undivided moiety of it: the survivor takes the whole. There is no separable interest until after the rendition of the judgment: the cause of action is indivisible until it is merged in a judgment. [Clark v. Railroad, 219 Mo. 524, 118 S. W. 40.] If, therefore, the contributory negligence of one parent, in the instant case the father, is a defense at all, it is a defense to the entire cause of action and not to an aliquot part of it.

We refer again to the common law doctrine of contributory negligence. It is a mere rule of convenience, namely; a court of law will not undertake to apportion between the plaintiff and defendant the consequences of their concurring acts of negligence. Contributory negligence does not, like fraud or illegality, go to the heart of the cause of action itself: it does not destroy or even affect the cause of action.

To simplify the discussion it will be assumed for the present that the father's negligence, under the facts of the instant case, was not imputable to the mother.

The father had, as we have seen, no separable interest in the penalty which he could sue for, alien or release prior to the rendition of the judgment therefor. No question therefore could have arisen during the trial with reference to apportioning between him and the defendant the damages, as we will call them, resulting from their concurring negligent acts. His contributory negligence, if a defense at all, must therefore go to the entire cause of action or to none of it, as heretofore pointed out.

If the father had died pending the trial and the mother had become the sole plaintiff, as she would have by reason of survivorship, the contributory negligence of the father would not have been a defense. This because the court would not have been called upon to apportion between plaintiff and defendant the consequences of their concurring acts of negligence: the father's negligence in that event would have been merely the concurring negligence of a third party. And the same situation would have arisen had the father died after the submission of the case and the return of the verdict by the jury, *but before the pronouncement of the judgment thereon.* Looking to the case in hand instead of the hypothetical one: if the father had had no interest at all in the cause of action, his contributory negligence would certainly have been no defense. Such interest as he did have was wholly contingent: contingent upon his living until after the obtention of judgment. At no time during the trial could it have been known whether he or his estate would have any interest whatever in the recovery. In this situation the question of apportioning the recovery could not reasonably have obtruded itself.

But to return to the analogies afforded by an estate by the entirety: there was a unity of the persons of father and mother

in respect to their ownership of the cause of action. The father-mother plaintiff was not guilty of contributory negligence: there was no call therefore for the court to apportion between such plaintiff and defendant the consequences of concurring acts of negligence. From whatever angle the question is approached it would seem plain that the father's contributory negligence was not an allowable defense to a cause of action in which he had neither a separable nor a certain interest.

II. The conclusion reached in preceding paragraphs that the father's negligence was not an allowable defense in this case was based on the assumption that his negligence was not imputable to the mother. That question we next consider.

(a) In order for one person to be chargeable with the negligence of another "the parties must stand in such relation to one another as to warrant the application of the principle expressed in the maxim *qui facit per alium facit per se.* . . . The general rule asserts that negligence in the conduct of another will not be imputed to a party if he neither authorized such conduct, nor participated therein, nor had the right or power to control it." [20 R. C. L. 148, sec. 121.] And the mere relation of husband and wife does not effect an exception to the rule: it is as applicable to them as to others. So run the modern authorities, some of which are cited later on in this opinion. Now there was nothing in the plea stricken from the defendant's answer charging that the asserted acts of negligence on the part of respondent David Herrell were committed in the prosecution of a joint enterprise to which the respondent Lizzie Herrell was a party—nothing to show a relation of master and servant or principal and agent between them —nothing in fact to show that his alleged contributory negligence was chargeable to her within the general rule just stated.

(b) A further contention is made that the negligence of one parent, in so far as it injuriously affects the protection of their children, must be imputed to the other. As dispositive of this contention we adopt the following from an opinion prepared in this case by Commissioner ELLISON:

"The next point made by appellant is that independent of the statute, when the plaintiffs are the parents of the deceased—husband and wife living as a family—the contributory negligence of one in *protecting their child* will be imputed to the other because of their mutual duties and responsibilities in the family relation In Darbrinsky v. Pennsylvania Co., 248 Pa. 503, 94 Atl. 269, L. R. A. 1915E 781, 783, the theory on which this rule rests is said to be that 'while the family relation exists, each parent at all times impliedly authorizes the other to act for him or her in the common

care and control of their children, so that each becomes responsible for the acts of the other in that respect, and this implied authority does not rest upon the legal fiction of the unity of husband and wife, but is founded upon the family relation.' To the same general effect are Toner's Admr. v. So. Cov. & C. St. Ry. Co., 109 Ky. 41, 58 S. W. 439; Vinnette v. N. P. Ry. Co., 48 Wash. 320, 91 Pac. 975, 18 L. R. A. (N. S.) 328, 334, and Kenna v. United Railroads (Cal.), 207 Pac. 35.

"On the other hand in Phillips v. Denver City Tramway Co., 53 Colo. 458, 129 Pac. 460, 32 Ann. Cas. 29, 33, a case of this same character, the Supreme Court of Colorado said: 'The negligence of the husband is not to be imputed to the wife unless he is her agent in the matter in hand, or they are jointly engaged in the prosecution of a common enterprise. The mere existence of the marital relation will not have the effect to impute the negligence of the husband or wife to the other.'

"In other words this Colorado case holds, in effect, that contributory negligence may not be imputed between spouses—even with respect to the care of their children—except as and when it would be imputed between any two persons under the general rule; and in the note to this case in 32 Ann. Cas. (1. c. p. 36) the annotator says: 'The cases are practically uniform in holding, in accord with the reported case, that the negligence of one parent contributing to the death of a child is not to be imputed to the other parent, so as to destroy the right of the latter to recover as a beneficiary of the cause of action for such death, . . .' There is a comprehensive note on the question in 23 A. L. R. 690, and it is there said the rule just stated is supported by the weight of authority. See also 8 R. C. L., sec. 67, p. 786; 20 R. C. L., sec. 130, p. 157; 17 C. J. sec. 93, p. 1244; 18 L. R. A. (N. S.) 328, note; 38 L. R. A. (N. S.) 754, note.

"The precise question has not been expressly considered in this State, though the conflicting views in other jurisdictions have been noted. [Chawkley v. Wabash Ry. Co., supra, 317 Mo. 1. c. 806, 297 S. W. 28.] But there are a large number of Missouri decisions in which it has been assumed without discussion that the negligence of one parent in failing to safeguard the children will be imputed to the other. Some are cases under what is now Section 4217, the section we are considering; some are under Section 4218, and one or two are common-law actions for loss of the services, etc., of a minor child. Among these are: O'Flaherty et ux. v. Union Ry. Co., 45 Mo. 70, 72; Frick v. St. L. K. C. & N. Ry. Co., 75 Mo. 542, 547; Nagel v. Mo. Pac. Ry. Co., 75 Mo. 653, 663 et seq.; Reilly v. H. & St. J. Railroad Co., 94 Mo. 600, 611, 7 S. W. 407, 411; Czezewzka v. Benton-Bellefontaine Ry. Co., 121 Mo. 210, 211, 25 S. W. 911, 913; Senn v. So. Ry. Co., supra (124 Mo. 1. c. 627, 28 S. W. 1. c.

68); Wiese v. Remmc, 140 Mo. 289, 299, 41 S. W. 797, 800; Leviu v. Met. St. Ry. Co., 140 Mo. 624, 631, 41 S. W. 968, 970; Cornovskı v. St. L. Transit Co., 207 Mo. 263, 271, 106 S. W. 51, 54; Howard v. Scarritt Estate Co., 161 Mo. App. 552, 559, 144 S. W. 185, 187; 267 Mo. 398, 402, 184 S. W. 1144, 1145; Jensen v. Kansas City, 181 Mo. App. 359, 363, 168 S. W. 827, 828; Mary Albert v. St. L. Elec. Term. Ry. Co., 192 Mo. App. 665, 672, 179 S. W. 955.

"In the O'Flaherty case first cited, for example, the plaintiff mother entrusted the care of her three-year-old daughter to the latter's eight-year-old sister. The younger child escaped and was run over by a street car. The plaintiff father was not shown to have been present or to have had anything to do with the arrangement, but the court conditioned both plaintiffs' right of recovery on proof that *neither* parent was guilty of contributory negligence. And so, substantially, all the cases run. In Mary Albert v. St. L. Elec. Term. Ry. Co., supra (192 Mo. App. l. c. 672, 179 S. W. l, c. 955), it seems the suit was by the *mother* alone, whereas the sole question on the merits was whether the *father* had been guilty of contributory negligence in failing to watch their child. And in Howard v. Scarritt Estate Co., supra (267 Mo. l. c. 402, 184 S. W. l. c. 1145), both the plaintiff parents were riding in a passenger' elevator when their four-year-old child fell out and was killed. The gist and effect of this court's ruling, as we understand the opinion, was that it was not the duty of both parents to be watching the child at the same time, but that one or the other of them should have been on guard, and that a *negligent* failure of both to watch, or negligence on the part of the one who was duty-bound at the time, would be contributory negligence barring both. The case is not exactly like those where one parent was absent.

"In all these Missouri cases the child was an infant of tender years—the ages run all the way from sixteen months to eleven years—and needed protection because of immaturity. In the case at bar the deceased was an able-bodied young man nineteen years old who needed no such protection. He was driving the automobile on his father's business, and was over the minimum age limit of sixteen years fixed by statute for operators of motor vehicles. [Laws 1921, 1st Ex. Sess., p. 104.] The mother was not with them and is not shown to have had anything to do with the trip or accident. The relation between the father and son was really that of master and servant.

"It is obviously unfair to impute to the mother the negligence of the father in these circumstances. Can we distinguish this case by saying negligence should be imputed between the parents as long as the offspring is physically or mentally dependent, but that the rule changes from then on? We do not see how any practical theory of that sort can be worked out. From the view-

point of the parents' responsibility what would be a safe age for one act or situation would not be for another, even after the child has reached an age where he, himself, could be guilty of contributory negligence. Or can we say if the relation between the child and the offending parent at the time is one of dependence and protection the negligence will be imputed to the other parent, whereas, if the relation is one of service, it will not be? It is equally impossible to lay down a workable rule on this theory. One way of looking at it the two relations are intermixed, for, so long as the parent claims and appropriates the services of the child because of minority, he owes the child the full duty of a parent, including protection. [46 C. J. secs. 2, 3, p. 1220.]

"It appears to us the long line of Missouri cases set out above must either be followed or overruled; they cannot be distinguished. And it is more in accord with present day views, legal and social, to say they should be overruled. We have got away from the common law idea that husband and wife are a unit motivated by the husband. Since the enactment of the death statutes in 1855 the Married Women's Acts were passed in 1875 and 1889 (Secs. 7328, 7323, R. S. 1919), and they have gone a long way in that direction. Following the adoption of the former sections, at least, the contributory negligence of the *husband* has not been imputable to the *wife*—at any rate in matters not involving the protection of the children, unless he authoritatively represented her. [Flori v. St. Louis, 3 Mo. App. 231, 240; Munger v. City of Sedalia, 66 Mo. App. 629; Moon v. St. L. Transit Co., 237 Mo. 425, 435, 141 S. W. 870, 872, Ann. Cas. 1913A 183.]

"On the other hand, while, speaking broadly, the husband was liable at common law for the torts of his wife, the rule also appears to be settled in this State that the contributory negligence of the *wife* will not bind the *husband,* unless she was acting in a like representative capacity. [Norton v. Hines, 211 Mo. App. 438, 245 S. W. 346; Rose v. Wells (St. L. Ct. App.), 266 S. W. 1015.] But if there has been any doubt about it, it seems the question was put at rest by the statute enacted in 1915, providing 'for all civil injuries committed by a married woman, damages may be recovered against her alone, and her husband shall not be responsible therefor, except in cases where, under the law, he would be jointly responsible with her, if the marriage did not exist.' [Sec. 4241, R. S. 1919; State v. Murray, 316 Mo. 31, 40, 292 S. W. 434, 439.] This statute is now a part of the same chapter and article in which the death statutes appear.

"Getting closer to the point, in 1913 the administration statutes were amended. The law had theretofore been that the father should be the natural guardian and curator of the children. [Sec. 403, R. S. 1909.] It was changed to include both the father *and*

*mother* 'with equal powers, rights and duties.' [Laws 1913, p. 91, sec. 371, R. S. 1919.] And there was a further section in the same act that if the husband and wife be living apart there may be a determination by the circuit court of their respective rights and duties as regards the minor children, without any preference between the two. To this was subjoined a provision saying 'and neither the husband nor the wife has any right paramount to that of the other in respect of the custody and control or of the services and earnings or of the management of the property of their said unmarried minor children, any provision of law whatever, written or unwritten, to the contrary in anywise notwithstanding.' All this is now Section 1813, Revised Statutes 1919. By amendment in 1921 the section was changed in some particulars and extended to apply to the parents of illegitimate children. [Laws 1921, p. 201.]

"We are not concerned in this case with the exact meaning and construction of these various statutes. There is some discussion of them by the Kansas City Court of Appeals in 292 S. W. 85. The point we have in mind is all of them negative the idea that the mere existence of the conjugal relation *ipso facto* constitutes each parent the representative of the other as regards every act in the safe rearing of the minor children of the family. Neither is it true in fact. We think the doctrine of the Colorado case, Phillips v. Denver City Tramway Co., supra, is right and should be followed in this State."

For the reasons indicated herein the striking out of the defense of contributory negligence was not error. The judgment of the circuit court is affirmed. All concur, except *Frank J.*, not sitting.