LOUIS BETZ, Administrator of Estate of JENNIE BAKER, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

Division One, May 24, 1926.

1. **NEGLIGENCE: Death Statute: Right to Sue.** A party seeking to recover from a corporation the penalty prescribed by the statute (Sec. 4217, R. S. 1919) for the negligent killing of another must, both by his pleading and his proof, bring himself squarely within its terms and requirements. That statute gives a right of action where none existed at common law, and where outside the statute plaintiff has no cause of action he does not have one under the statute unless it expressly gives him the right to sue.

Betz v. K. C. Southern Ry. Co.

2. ———: **Death of Childless Married Woman: Later Death of Husband: Administrator: Right to Sue: Common Disaster.** In a collision between an automobile and defendant's railroad train a married woman was instantly killed, and her husband was injured and died from his injuries three hours later. She left surviving her no child or children, natural born or adopted, or father or mother, and she was over twenty-one years of age. The question for decision is whether the administrator of the deceased wife can maintain an action to recover the penalty which the statute (Sec. 4217, R. S. 1919) requires the railroad company to pay for negligently and wrongfully killing her. She and her husband were riding in an automobile when the collision occurred; she was instantly killed; he was taken to a hospital, and died three hours later from injuries received in the collision. Plaintiff contends that, while the husband survived her three hours, in truth and fact, and within the purview of the statute, "they perished together in the same disaster," and that said statute, under the facts and circumstances, authorizes her administrator to sue for her death. The administrator had no cause of action at common law in such case, and the statute, in designating who may sue for the recovery of the penalty imposed by it, says that it may be brought "by the husband or wife of deceased," or "if there be no husband, wife, minor child or minor children, natural born or adopted as hereinbefore indicated, or if the deceased be an unmarried minor and there be no father or mother, then in such case suit may be instituted and recovery had by the administrator or executor of the deceased." *Held,* that the administrator of the deceased wife cannot maintain an action to recover the penalty which the statute authorized to be inflicted upon the railroad company: *first,* because the right to sue for her death was a new cause of action given by the statute to her husband, immediately upon her death, and when he died it died with him; and, *second,* because the husband survived the wife, and although during the three hours he survived her he was incapable, both physically and mentally, of commencing or authorizing the commencement of an action for her death, and although the death of both resulted from the same negligent collision, the statute does not provide that the cause of action given by the statute to him may, upon his failure to sue, be brought by her administrator.

3. ———: ———: **New Cause of Action.** Upon the death of a wife by the wrongful act of a railroad company, the right to sue for the penalty prescribed by the statute is not a mere transmitted right, which survives to her administrator if not appropriated by her surviving husband. On the contrary, it is a new cause of action, which by the amendment made to the statute in 1905 vests in her surviving husband, where the wife leaves no minor child or children,

natural or adopted, and no father or mother, and upon the failure of the husband to commence action during the time he survives, however short that time may be and however incapable of suing he may be, her administrator is given no authority to sue, but upon the death of the husband the cause of action dies with him.

4. ———: ———: **As Hereinbefore Indicated.** Section 4217, Revised Statutes 1919, says that the husband may sue for the wrongful death of his wife, or if there be no husband, or he fails to sue "within six months after such death, then the minor child or children of deceased . . . whether natural born or adopted child or children of the deceased," may sue, and in the fourth clause that "if there be no husband, wife, minor child or minor children, natural born or adopted as hereinbefore indicated, . . . then in such case suit may be instituted and recovery had by the administrator" of deceased. *Held*, that the words "as hereinbefore indicated" do not relate back to husband, but modify the words "natural born or adopted child," and those words as used in said fourth clause will not authorize a holding that if the husband fails to sue within six months for the negligent killing of his wife, and there is no minor child or parent, her administrator may sue.

5. ———: ———: **Plain Statute: Liberal Construction: Judicial Amendment.** Section 4217, Revised Statutes 1919, as amended in 1905 by adding its fourth clause, is a plain and unambiguous statute, and cannot be further amended by judicial construction. Being plain and admitting of only one meaning, the usual rules for construing ambiguous statutes do not apply. It calls for neither a strict nor a liberal construction, but its plain wording controls. It creates a new cause of action for a tort, and since it does not provide that the cause of action, which it vests upon certain conditions in the husband for the negligent killing of his wife, upon his death may be brought and maintained by her administrator, the court cannot by construction read such provision into it. That would be to assume legislative functions. Such conclusion may enable the railroad company which negligently caused the death of the wife to escape from paying the penalty which the statute contemplates the company must pay, but the cause of action is created by the statute and if it fails to name the person who may sue for the penalty, that is a defect which only the Legislature can supply.

Corpus Juris-Cyc. References: Courts, 15 C. J., Section 315, p. 925, n. 46; p. 926, n. 48, 50, 51. Death, 17 C. J., Section 37, p. 1184, n. 29; Section 43, p. 1193, n. 2; Section 59, p. 1212, n. 4. Statutes, 36 Cyc., p. 1106, n. 29; p. 1107, n. 30, 31, 32, 33; p. 1114, n. 96; p. 1115, n. 97, 98, 99, 1, 2.

Transferred from Springfield Court of Appeals.

REVERSED.

*Cyrus Crane, Hugh E. Martin* and *Ray Bond* for appellant.

Under the statute the plaintiff as the administrator of the estate of Jennie Baker, deceased, had no capacity to sue, because Charles Baker, the husband of Jennie Baker, survived her. Chandler v. Railroad, 251 Mo. 592; Clark v. Railroad, 219 Mo. 524; Freie v. Ry. Co., 283 Mo. 457; Gibbs v. Hannibal, 82 Mo. 143; Gilkeson v. Railroad, 222 Mo. 173; Wilcox v. Warren Const. Co., 186 Pac. 13, 95 Ore. 125; Hamman v. Coal & Coke Co., 156 Mo. 242; Bean v. L. & N. Railroad Co., 29 S. W. (Tenn.) 370; Frazier v. Ga. Railroad, 22 S. E. 936; Sanders v. L. & N. Ry. Co., 111 Fed. 708; Hammond v. Lewiston, A. & W. St. Ry., 76 Atl. (Me.) 672; Woodward v. Chicago, 23 Wis. 400.

*Hugh Dabbs, Norman A. Cox* and *Walden & Andrews* for respondent.

The court properly held that Louis E. Betz, administrator of the estate of Jennie Baker, deceased, was entitled to bring suit in this case. Gibbs v. City of Hannibal, 82 Mo. 143; Gilkenson v. Railroad, 222 Mo. 173; Freie v. Frisco Railroad, 283 Mo. 465; Sheppard v. Railroad, 3 Mo. App. 553; Miller v. Transit Co., 216 Mo. 105; Pakard v. Railroad, 181 Mo. 428; Barker v. Railroad, 91 Mo. 92; R. S. 1919, sec. 4217; David v. Railroad, 41 Ga. 223; Chivers v. Rogers, 23 So. 100; Huberwald v. Railroad, 23 So. 474; Garrald v. Railroad, 126 N. E. 53; Morris v. Gas Co., 49 S. E. 854; Railroad v. Moore, 30 Am. Rep. 98; Shawnee v. Cheek, 41 Okla. 227, 51 L. R. A. (N. S.) 672; Johnson v. Railway, 222 Mass. 583, L. R. A. 1918A, 650.

SEDDON, C.—This is an action by plaintiff, the administrator of the estate of Jennie Baker, deceased, to

recover, because of deceased's alleged wrongful death, the penalty prescribed by Section 4217, Revised Statutes 1919. A jury was waived by the parties, and the cause was submitted to the trial court, sitting as a jury, resulting in a finding and judgment for plaintiff in the sum of $5,000. Having taken the necessary preliminary steps therefor, defendant appealed to the Springfield Court of Appeals, where, by a divided court, the judgment *nisi* was reversed and the cause remanded. One of the learned judges of that court, however, dissented from the majority opinion, and asked that the case be certified to this court under the mandate of Section 6 of Amendment of 1884 to Article VI of the Constitution of this State, which was accordingly done. The majority and dissenting opinions of the Court of Appeals are fully reported in Betz v. Kansas City Southern Railway Co., 253 S. W. 1089.

The petition alleges that, at the time of the casualty, Jennie Baker, with her husband, Charles H. Baker, was riding in an automobile then and there being driven by the said Charles H. Baker, upon a public highway which crosses defendant's railroad track, and that defendant, its servants and employees, in charge of a locomotive and train of cars, negligently and carelessly ran and operated the same so as to cause the same to run upon and strike said automobile, resulting in the instant death of said Jennie Baker. The petition charges defendant with negligence in failing to give the statutory warnings by bell or whistle, and in failing to keep a reasonable and proper lookout for persons and vehicles approaching and crossing over said crossing, and with negligence under the humanitarian rule. It is furthermore alleged in the petition that "although said Charles Baker lived a short time after said collision and injury, and after the instant death of the said Jennie Baker, in truth and fact and within the purview of Section 4217 of Revised Statutes of Missouri of 1919, under which this action is brought, the said Charles Baker and Jennie Baker perished together in the same disaster." It is also alleged

that Jennie Baker left surviving her no minor child or children, natural born or adopted, and that she was over the age of twenty-one years and left surviving her no father or mother.

The answer denies generally the allegations of the petition, except the allegations that said Jennie Baker left her husband surviving her and that her said husband died after Jennie Baker died and did not bring any suit during his lifetime for the death of Jennie Baker. The answer furthermore pleads, as a defense, the contributory negligence of Jennie Baker, in certain specified respects, and "that said Charles H. Baker lived for some time after the death of said Jennie Baker and that said Charles H. Baker survived said Jennie Baker, by reason whereof, if there were any right of action for the death of said Jennie Baker against this defendant (which defendant denies), such right of action was and is not vested in the plaintiff in this cause and plaintiff is without legal capacity to sue in this action." The reply is a general denial.

Defendant objected to the introduction of any testimony in the cause for the reason that the petition does not state facts sufficient to constitute a cause of action, and for the further reason that, if there is a right of action in any one, the petition discloses on its face that such right of action is not in the plaintiff, administrator of the estate of Jennie Baker. The objection was overruled and exceptions were taken and saved by defendant to that ruling of the trial court.

Plaintiff's evidence showed that Jennie Baker was instantly killed in the catastrophe and that she left surviving her no child or children, natural born or adopted, and no father or mother, but that she was survived by two brothers and one sister. Jennie Baker was fifty-seven years of age at the time of her death. Plaintiff was duly appointed as the administrator of Jennie Baker's estate on April 10, 1920, prior to the institution of this action, by the Probate Court of Jasper County, and duly qualified as such administrator. The casualty oc-

curred on Easter Sunday, April 4, 1920. Plaintiff admitted, as part of his case-in-chief, that the casualty happened about 11:30 A. M., and Jennie Baker was instantly killed, and that Charles Baker, her husband, survived her and died about 2:30 P. M. on the same day. The evidence shows that Charles Baker was badly scarred and mutilated, his nose was broken, one hand was cut off, and his body was covered with blood. He was placed upon the train and taken to a hospital in Pittsburg, Kansas, where he died within three hours after the casualty. It is also admitted that no suit was instituted by Charles H. Baker, under the statute, to recover for the death of his wife, Jennie Baker.

Defendant demurred to the evidence at the close of plaintiff's case-in-chief and again at the close of the whole case. Both demurrers were overruled and exceptions were taken and saved by defendant.

We are at the outset confronted with the contention of appellant that, under the wrongful death statute upon which this action is predicated, the plaintiff administrator of the estate of Jennie Baker, deceased, has no right or capacity to sue, or to maintain this action, inasmuch as it is an admitted fact upon the record that Jennie Baker was instantly killed in the collision and her husband survived her for the space of some three hours after her demise, and that Jennie Baker left surviving her no minor child or children, natural born or adopted, and she was not an unmarried minor leaving a father or mother surviving her. The portion of the statute (Sec. 4217, R. S. 1919) bearing upon the precise question now before us, and which names the beneficiaries or persons entitled to sue for the death of any person caused by the negligence of a railroad company and the order in which they may sue, is as follows:

"First, by the husband or wife of the deceased; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased, whether such minor child or children of the deceased be the natural

born or adopted child or children of the deceased  . . .;
or, third, if such deceased be a minor and unmarried,
. . . then by the father and mother, who may join in
the suit, and each shall have an equal interest in the judg-
ment; or if either of them be dead, then by the survivor;
or, *fourth, if there be no husband,* wife, minor child or
minor children, natural born or adopted as *hereinbefore
indicated,* or if the deceased be an unmarried minor and
there be no father or mother, *then in such case* suit may
be instituted and recovery had by the *administrator or
executor of the deceased* and the amount recovered shall
be distributed according to the laws of descent." (Ital-
ics ours.)

The precise question herein raised is an interesting
one, and is one which, so far as we have been able to find,
this court has heretofore not been called upon to rule
under the same, or a similar, state of facts. There is
no question, upon the record before us, that the decedent,
Jennie Baker, died instantly as a result of injuries
suffered by and inflicted upon her in the collision be-
tween defendant's train and the automobile in which she
was riding, and that this action is brought by the ad-
ministrator of her estate to recover a *penalty* (so called
and designated by the statute) because of her death.
Neither is there any question that, under the common
law, adopted in this State in 1816, a right of action for
personal injuries resulting in death died with the injured
person. It was not until 1855, when our wrongful death
statute, patterned after and borrowed largely from Lord
Campbell's Act, was enacted, that a right of action for
wrongful death was given in this State, where none had
theretofore existed under the common law. [Chap. 51,
vol. 1, R. S. 1855.] That statute, and particularly Sec-
tion 2 thereof, which is the section herein involved, has
been carried forward by subsequent revisions of the stat-
utes with slight changes (not material so far as the pre-
cise question here is involved) until 1905. In 1905, how-
ever, a fourth class of persons or beneficiaries entitled
to sue under said statute was added by inserting the fol-

lowing clause in Section 2 thereof: "or, fourth, if there be no husband, wife, minor child or minor children, natural born or adopted as hereinbefore indicated, or if the deceased be an unmarried minor, and there be no father or mother, then in such case suit may be instituted and recovery had by the administrator of the deceased and the amount recovered shall be distributed according to the laws of descent, and such corporation, individual or individuals may show as a defense that such death was caused by the negligence of the deceased." [Laws 1905, p. 135.] Plaintiff herein seeks to bring himself within the foregoing amendatory clause of the statute.

It is thoroughly established law in this State that a party seeking recovery under the aforementioned statute must, both by his pleading and his proof, bring himself squarely within the terms and requirements of the statute. In the very early case of Coover v. Moore, 31 Mo. 574, this court, construing the original wrongful death statute of 1855, announced the doctrine in these words: "There being thus no general right of recovery open to all persons representing the estate of the deceased or interested in his life, only such persons can recover in such time and in such manner as is set forth in the statute."

Later, in Barker v. Railroad Co., 91 Mo. 86, 94, the doctrine was reiterated aptly in these words: "In statutory actions of this sort, the party suing must bring himself strictly within the statutory requirements, necessary to confer the right, and this must appear in his petition; otherwise, it shows no cause of action."

The decisions of this court, consistently holding to the foregoing doctrine, are collated in Chandler v. Railroad Co., 251 Mo. 592, 601, in which case the learned writer of that opinion concludes: "It may be said, then, as the sum of the matter that *outside* of that statute plaintiff had no right to sue, therefore she must bring herself *inside* the statute in order to sue. This she has not done and for that reason the judgment must, at least, be reversed." The doctrine is subsequently adhered to and

followed in Freie v. Railway Co., 283 Mo. 457, and Longan v. Railways Co., 299 Mo. 561.

Plaintiff in the instant action apparently concedes the foregoing established doctrine, but endeavors to bring himself within the requirements of the statute, as amended in 1905, by strenuously asserting that, while the spark of life smoldered in Charles Baker, husband of decedent, for three hours and then finally went out, nevertheless, *within the purview of the statute,* both wife and husband perished together in one common disaster.  Obviously, upon the record before us, Charles Baker, the husband, was at no time after the death of his wife capable, either physically or mentally, of commencing, or authorizing the commencement of, a suit for his wife's death.  In support of his assertion, plaintiff leans heavily upon the language used by this court in Gibbs v. City of Hannibal, 82 Mo. 143.  In that case, one George L. Crosby, his wife and their two infant children perished in the fall of a bridge, alleged to have resulted from the negligence of defendant city.  Plaintiff was the administrator of Mrs. Crosby's estate and sued for the death of the husband, George L. Crosby, and for the death of each minor child, alleging in his petition that Mrs. Crosby survived her husband and two minor children, and that, while so surviving, a cause of action vested in her for the death of her husband, and that a cause of action vested in her for the death of each of her two minor children.  The defendant filed a demurrer to the petition, on the ground that it did not state facts sufficient to constitute a cause of action, which demurrer was sustained, and plaintiff permitted a judgment to go for defendant and took an appeal therefrom.  The propriety of that ruling was the only question before this court. The wrongful death statute, as it then existed, allowed a recovery: first, by the husband or wife of deceased; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased; or, third, if such deceased be a minor and unmarried, then by the father

and mother, who may join in the suit, and each shall have an equal interest in the judgment, or if either of them be dead then by the survivor. In ruling the single question before us, this court, after quoting the statute, there said: "These are the only beneficiaries who can maintain such an action. If in any case there be no such person, no suit can be brought by any other person. By the statute the action survives only to the parties named. They alone are the beneficiaries of the statute and it was never intended that such action should survive to the executor or administrator of any one of the beneficiaries named. It is a right personal to the beneficiary, and does not survive to his personal representatives. *In the case at bar all the beneficiaries within the purview of the statute perished together in one common disaster and there was no person left to whom the action could survive.* It follows that this action cannot be maintained by the present plaintiff, who is the administrator of the wife. Under the statute he has no standing in court." (Italics ours.)

Plaintiff bottoms his contention upon the italicized sentence in the above quoted portion of the opinion in the Gibbs case. A careful analysis of the language of that opinion, however, convinces us that the italicized sentence was entirely unnecessary in ruling the point therein actually decided, which was that plaintiff administrator could not maintain the action because the statute did not, by its terms, confer such right upon the personal representative of a beneficiary under the statute. Hence, the italicized sentence relied upon by plaintiff here was *obiter dictum,* nothing more. But plaintiff says that the foregoing language from the Gibbs case has been subsequently quoted by this court in Gilkeson v. Railway Co., 222 Mo. 173, and Freie v. Railway Co., 283 Mo. 457, and therefore apparently bears the stamp of our approval. In both the Gilkeson and Freie cases, the action was sought to be maintained by the personal representative of a beneficiary under the statute, as in the Gibbs case, and it was ruled in both of

those cases, in line with the Gibbs case, that the right of action was personal to the beneficiary designated by the statute and, when the beneficiary died, the right of action died with him, because the statute gave no right of action to his personal representative. Therefore, the Gilkeson and Freie cases cannot be said to support plaintiff's contention herein; rather do they tend to support the contention of defendant.

The case of Longan v. Railways Co., 299 Mo. 561, bears some resemblance in principle to the case at bar. There, one Lucy E. Longan brought suit to recover damages for personal injuries suffered by her as the result of a collision between an automobile in which she was riding and defendant's street car. The suit resulted in a verdict and judgment for defendant, from which plaintiff appealed to this court. While the appeal was pending here, the original plaintiff, Lucy E. Longan, died, her death was suggested and the cause revived in the name of the administrator of her estate. It was made to appear, however, that the deceased original plaintiff was survived by her husband and a minor child, but it did not appear upon the record whether the original plaintiff died from the effects of the injuries received in the collision with defendant's street car, or whether her death was occasioned from natural causes. Assuming, however, that she died from the effect of her injuries, Division Two of this court, in an opinion written by RAILEY, C., after quoting the wrongful death statute, as amended in 1905, said: "The above section points out the persons who may sue, and they alone must sue within the time prescribed by the statute. [Freie v. Ry. Co., 283 Mo. l. c. 463, 222 S. W. l. c. 825, and cases cited. See also Millar v. Transit Co., 216 Mo. 99, 115 S. W. 521.] . . . The leading authorities in this State are collated in the above cases, and conclusively show that if this suit had been brought by the administrator in the circuit court, for the death of Mrs. Longan, it could not have been maintained by him, as she left surviving her a husband and minor child. . . . It is manifest from

the foregoing authorities that if Mrs. Longan died from the effects of the collision, the administrator of her estate could not have sued for and recovered damages on account of her death, when she left a husband and minor child surviving her, as shown in this case.''

While the wrongful death statutes of some of our sister states differ somewhat, in their terms and requirements, from our own statute, and therefore the holdings of the courts of foreign jurisdictions are not controlling upon us, nevertheless the holdings of the highest courts of our sister states upon similar questions indicate the logic and reasoning of judicial minds upon those questions, and are at least helpful to us in arriving at a right conclusion upon the precise question now before us.

In Wilcox v. Warren Construction Co., 95 Ore. 125, 186 Pac. 13, one Henry Wilcox died in the service of defendant by reason of its negligence. He left surviving him a widow, who at the time was insane and died in an insane asylum three months after the death of her husband. He was also survived by two minor children by a former marriage, who, after the death of the insane widow, brought suit under the employers' liability statute for the death of their father. The Oregon employers' liability statute provides: ''If there shall be any loss of life by reason of the neglects or failures or violations of the provisions of this act . . . the widow of the person so killed, his lineal heirs or adopted children, or the husband, mother, or father, as the case may be, shall have a right of action.'' The trial court sustained a demurrer to the petition, judgment went for defendant and an appeal was taken by the plaintiffs. Said the Oregon Supreme Court, in ruling the point: ''The theory of the plaintiffs as outlined in their brief is that although the widow had a cause of action, yet on her death it passed to the next on the list, namely, the plaintiffs, who are the decedent's lineal heirs. . . . The statute is a drastic enactment substantially making the employer an insurer against all manner of casualty

which may happen to an employee; for the persons named in the statute are required to use every practicable device, care and precaution for the safety of those employed without regard to expense and limited only by the efficiency of the plant. Being in derogation of the common law, its terms are not to be expanded by implication . . . and the judiciary cannot go beyond its boundaries. That is the prerogative of the legislative branch of the government, which the courts cannot assume even to relieve a present hardship. The widow, having been invested with a cause of action by the death of her husband, was at liberty to prosecute it or not. If she did, she was under no obligation to divide the proceeds with any of the decedent's other relatives. If she did not prosecute, either in her own proper person or by guardian, her cause of action died with her and did not pass to another, being personal to herself. The demurrer was properly sustained as a matter of law and the judgment should be affirmed.''

In Bean v. Railroad Co., 94 Tenn. 388, 29 S. W. 370, the Tennessee wrongful death statute was under review. That statute provides that the right of action for one's death caused by wrongful act ''shall pass to his widow, and in case there is no widow, to his children, or to his personal representative, for the benefit of his widow or next of kin, free from the claims of creditors.'' Suit was brought by the administrator of decedent's estate. Decedent left a widow surviving him. Judgment went for defendant, and plaintiff appealed. Pending the appeal, the widow died, leaving decedent's father as his next of kin. Motion was filed by defendant to abate the action. Said the Supreme Court of Tennessee: ''The question now presented, probably for the first time in this State, is whether, upon the death of the widow, the suit abates or can the administrator still prosecute it for the benefit of the father, who is the next of kin of plaintiff's intestate? The question, when laid in a narrow compass, and reduced to its ultimate analysis, is whether the right of action survives and is limited to those entitled to the

recovery at the death of the deceased, or whether, upon the death of those then entitled, the cause of action survives, and revests in the next of kin in the line of distribution. . . . The widow having died, the question now to be determined is, whether the suit abates, or whether the administrator may still prosecute it for the benefit of the father of deceased, who is the next of kin now surviving. We think the exclusive statutory beneficiary was that person or class of persons who were entitled to the recovery at the death of deceased, when the cause of action accrued. In this case it was the widow, and, in the language of the statute, the right of action passed to her, or to the administrator for her benefit. The right of recovery having once vested in the widow, it did not pass upon her death to her personal representative; neither did it revest in the next of kin of deceased, for the reason that no provision is made in the statute for such contingency. The cause of action, upon the death of the person to whom it survived, or for whose benefit it might be prosecuted, was thereby extinguished.'' The foregoing opinion is quoted with approval by LURTON, J., in Sanders' Admrx. v. Railroad Co., 111 Fed. 708.

In Hammond v. Street Railway, 106 Me. 209, 76 Atl. 672, the Maine wrongful death statute was under review. The statute provides that an action thereunder ''shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of his widow, if no children, and of the children, if no widow, and if both, then of her and them equally, and, if neither, of his heirs.'' Decedent left a surviving widow, but no children. Subsequently the widow died, no administration then having been taken out upon her husband's estate and no suit having been brought for her benefit. After the death of the widow, the plaintiff, a sister of decedent and his sole heir at law, was appointed administratrix of his estate and began the action for his death. Said that court: ''It is conceded that at common law no

remedy by action existed for loss of life. The right of action set up by the plaintiff is a pure creature of statute, and upon the fair construction of that statute this case stands or falls. . . . The language of the statute under consideration is plain and unambiguous. Some beneficiary named therein must exist at the time of the death of the deceased, otherwise no right of action arises. The suit is not for the benefit of the estate, and creditors have no interest in it. True, such suit is brought in the name of the administrator, but he is merely the nominal party and acts as trustee. The Legislature could have given the right directly to the widow or children or heirs, had it seen fit to do so; as the legislatures of some states have done. But if none of the beneficiaries exist at the time of death, no right of action is created. . . . The beneficiaries have a right of action then or not at all, and the facts of each particular case determine which beneficiaries have the right. If there is a widow, as here, she has the sole and exclusive right. It belonged to her immediately upon the death of her husband and could not be transferred to any other beneficiary either by her death or failure to bring suit. The statute provides for several possible claimants, but the facts in each case determine which of them is the actual and sole claimant. There is no life interest in the widow with a remainder over to the heirs at law. One action is granted, not several. When the husband died the sister had no cause of action, and the death of the widow has not given her one.''

In Woodward v. Railway Co., 23 Wis. 400, that court said: ''In this case, the deceased, who was a married woman, left a husband, who survived until some time after this action was commenced. Upon her death, therefore, the right of action, by the statute, vested solely and exclusively for the benefit of her husband. He alone was entitled to the amount to be recovered, and could hold and dispose of the same at pleasure. The lineal descendants and ancestors of the deceased had no interest whatever in the action, and the damages to be

recovered could not be estimated with reference to the pecuniary injury, if any, resulting to them, or any of them. . . . The question then arises as to the effect of the death of the husband: Did the action abate thereby, or does it survive, so that it may still be prosecuted for the benefit of the infant child of Mrs. Woodward? In answering this question we are first to consider the nature of the action, whether it is one sounding in tort or contract. Upon this point it does not seem to us that there can be two opinions. It is clearly an action of tort. . . . It being, therefore, an action of tort, and the sole party in interest having died, the next inquiry is, whether it falls within the general rule of the common law, that such an action does not survive the death of the party in whose favor it existed. It is very clear to our minds that it is not distinguishable in this particular from other actions of tort, and that the common-law rule must govern, unless it has been taken out of the operation of that rule by some express provision of statute. We know of no such provision. . . . The position that the action does not abate because the nominal plaintiff, the administrator, still lives and is ready and willing to prosecute it, seems scarcely worthy of serious thought. The administrator is a mere trustee, so made by the statute, with power to sue for the benefit of his *cestui que trust,* or the person beneficially interested. . . . It appears that the person so entitled died, and that the right of action expired with him; and for that reason, if for no other, the judgment of nonsuit must be affirmed.''

Plaintiff cites Garrard v. Railway Co., 100 Ohio St. 212, 126 N. E. 53, as holding to the contrary, and such seems to be the effect of that decision. However, the Ohio Supreme Court was reviewing the wrongful death statute of that state, which is quite different from our own, and which provides that an action for wrongful death ''shall be for the exclusive benefit of the wife, or husband, and children, or if there be neither of them, then of the parents and next of kin of the person whose

death was so caused. It must be brought in the name of the personal representative of the deceased person and the jury may give such damages as it may think proportioned to the pecuniary injury resulting from such death, to the persons, respectively, for whose benefit the action was brought.'' Said that court: ''The legal phase of the question involved depends upon the construction of the section quoted. In its construction there is no doubt in our mind that the legislative purpose was to provide recovery for the class existing at the time the action is brought. . . . The view of the Court of Appeals was 'that the cause of action vested solely in the widow.' The statute does not so provide. In fact, the statute expressly provides that the right to enforce the liability is lodged in the personal representative of the deceased person. By force of this statute the right to enforce the liability is not placed in the beneficiary. Such being the case, under the explicit language of the section there is no doubt but that the legislative purpose was to provide an existing class thereunder who should respond at the time the personal representative instituted his suit.'' In the respect pointed out in the foregoing opinion, however, it is apparent that the Ohio statute differs materially from our own Missouri statute.

Plaintiff claims that the decisions of this State are to the effect that, on the death of Jennie Baker by wrongful act, the right of action for her death under the statute did not *vest,* at the instant of her death, in her husband (assuming that he survived her within the purview of the statute), but that the statute merely *transmits* to the husband the right of action that would have been in her, had she survived, but which right did not *vest* in him until and unless he *appropriated* it by bringing suit within six months thereafter. Hence, it is claimed that the fundamental meaning of the wrongful death statute is not that it creates a new cause of action in the first beneficiary named (i. e., the husband or wife of the deceased), but that it *transmits* a right to the beneficiary named which would have belonged to the person wrongfully

killed had she lived, and then only in the event the named beneficiary *appropriated* the cause of action by bringing suit thereon within the time and in the manner designated in the statute. The appellate courts of this State, in their several opinions touching our Damage Act, have used a variety of expressions in attempting to name the action which a surviving beneficiary has under the act, and it is true that language has been used in some of those opinions which supports plaintiff's contention that the right of action is a *transmitted* one. This court, however, sitting in banc, has but recently had occasion to analyze and harmonize the case law of this State pertaining to that troublous and disputed question. In State ex rel. William Thomas v. Daues et al., Judges of St. Louis Court of Appeals, 314 Mo. 13, GRAVES, J., speaking for this court in banc, exhaustively reviews a long line of cases in this State and arrives at this conclusion: ''The very purpose of the Damage Act of 1855 was to *give* a cause of action, where none existed at common law. It *did not revive* a cause of action theretofore belonging to the deceased, *but it gave a new cause of action to named parties* bearing relationship to the deceased. Take the instant case. Mrs. Thomas had a cause of action so long as there was breath in her body for damages for her negligent injury, *but that is not the cause of action which her husband has by reason of the Damage Act.* His cause of action is a penalty inflicted by statute for her death. Of course, her death had to be caused by the negligence of defendant, before there was liability on the part of defendant. Absent death, her cause of action was damage to herself. With her death (absent a settlement of her cause of action) *then sprang up for the first time* (under the Damage Act) *a cause of action in her husband.* There was *no survival of her cause of action* (because that was merely for damages suffered by her) *but there was a new and different cause of action* (by virtue of the Damage Act) *given to the husband.* The negligence of the defendant was incidental and a factor in both, but this fact does not change the situation. Her cause of action might

have been purely a common-law action for damages, but certain it is that the husband's action is a purely statutory action for a penalty." (Italics ours.)

Neither can we give our assent to plaintiff's contention that Charles Baker, the husband of Jennie Baker, must have first *appropriated* the right of action given by the statute by suing for his wife's death *before the right of action vests in him.* The amendatory clause of the statute, enacted in 1905 and which creates a fourth class of persons entitled to sue, under which plaintiff claims a right of action, does not so require. The clause of the statute which creates the second class of persons who may sue does provide that, if the husband or wife of deceased fails to sue within six months after deceased's death, then the minor child or children of deceased may sue. In the instant case, there was no minor child. All the classes of beneficiaries, including deceased's husband, Charles Baker (because of the fact that there were no minor children in the instant suit), are given one year after the accrual of the cause of action, i. e. after decedent's death, within which to sue. [Sec. 4221, R. S. 1919.] Consequently, Jennie Baker's husband (in the absence of a minor child or children, as here) was not required by the statute to *appropriate* the right of action for his wife's death, but the right of action, immediately upon her death, sprang up, i. e., vested, in the husband. Nor can we ascribe to the words "as hereinbefore indicated," as used in the amendatory clause of the statute creating the fourth class of beneficiaries, the meaning or significance which plaintiff seeks to ascribe to them. The amendatory clause reads: "If there be no husband, wife, minor child or children, natural born or adopted as *hereinbefore indicated,*" etc. Plaintiff insists that the italicized words modify the word "husband," so that it becomes apparent that the clause "if there be no husband, . . . . as hereinbefore indicated" means "not only no husband living after the death of the wife, but includes as well a husband who fails to sue from whatever cause, be it death or otherwise, within the stat-

utory period of one year.'' We think the italicized words modify the word ''adopted'' alone and refer only to the term ''adopted child or children'' as specifically defined in the second preceding clause of the statute. Under the ordinary rules of grammatical construction and punctuation, if it had been intended that the italicized words should modify all of the preceding subjects, including the word ''husband,'' then the italicized words ''as hereinbefore indicated'' would have been set off, or preceded and followed, by commas. There is no comma between the word ''adopted'' and the italicized words; therefore, they must have been intended to modify the word ''adopted'' alone.

Finally, defendant (appellant), on the one hand, urges that the particular section of the damage act here in controversy is penal in its nature and, therefore, must be given a strict construction. Plaintiff (respondent), on the other hand, insists that this court, en banc, in Grier v. Railway Co., 286 Mo. 523, 536, has ruled that, considering the statute as a whole, ''it is clearly manifest that the Legislature intended to make the entire recovery *primarily a punishment* for causing death by negligence, unskillfulness, or criminal intent, whatever incidental or secondary purpose it might at the same time subserve. . . . Nor was there ever any question but that the object of the statute was *primarily to punish,* and *secondarily* or *incidentally* to afford compensation.'' From the foregoing premise, plaintiff argues in his brief: ''This being the *primary purpose of the statute* as announced by this court in banc, it follows necessarily that this *public purpose* of the statute is the dominant one, and that this public purpose can only be effected by penalizing, *in every instance,* one who violates its provisions, to the end that violations thereof will cease.'' Therefore, plaintiff insists that we must apply to the statute a liberal construction in order to prevent the mischief and advance the remedy intended.

However, the language of the statute (and particularly the language of the amendatory clause of 1905,

creating a fourth class of beneficiaries, in which class plaintiff falls) is plain, clear and unambiguous. In 36 Cyc. 1106, it is said: ''The great fundamental rule in construing statutes is to ascertain and give effect to the intention of the Legislature. This intention, however, must be the intention as expressed in the statute, and where the meaning of the language used is plain, it must be given effect by the courts, or they would be assuming legislative authority.'' And in 36 Cyc. 1114, it is furthermore said: ''In the interpretation of statutes, words in common use are to be construed in their natural, plain, and ordinary signification. It is a very well-settled rule that so long as the language used is unambiguous, a departure from its natural meaning is not justified by any consideration of its consequences, or of public policy, and it is the plain duty of the court to give it force and effect.'' RAGLAND, J., speaking for this court, in banc, in Grier v. Railway Co., 286 Mo. 1. c. 534, reviewing the selfsame statute, recognized the well-settled rule when he said: ''The primary rule for the interpretation of statutes is that the legislative intention is to be ascertained by means of the words it has used. All other rules are incidental and mere aids to be invoked when the meaning is clouded. When the language is not only plain, but admits of but one meaning, these auxiliary rules have no office to fill. In such case there is no room for construction.'' And, in Clark v. Railroad Co., 219 Mo. 1. c. 534, LAMM, P. J., speaking for this division of our court, aptly and pointedly said: ''Courts have no right, by construction, to substitute their ideas of legislative intent for that unmistakably held by the Legislature and unmistakably expressed in legislative words. *Expressum facit cessare tacitum.* We must not interpret where there is no need of it. [McCluskey v. Cromwell, 11 N. Y. 1. c. 601-2].'' In Shepard v. Railway Co., 3 Mo. App. 1. c. 553, the St. Louis Court of Appeals in reviewing the second section of the Damage Act, said: ''It is contended, on one part, that this statute is in derogation of the common law, and should be strictly construed; on the

other, that it is remedial, and should receive a liberal interpretation. But, if the intention of the Legislature can be ascertained from the language, it is not necessary to resort to formal rules of construction."

We think the statute in question here calls for neither a strict nor a liberal construction on our part. The language of the statute, as we have said, is plain, clear and unambiguous and the statute upon its face speaks the legislative intent without the aid of auxiliary rules of construction. If we should paraphase (according to plaintiff's contention) the clause of the statute which plaintiff claims gives him a right of action herein, it would read about as follows: "or, fourth, if there be no husband, wife, minor child or minor children, natural born or adopted as hereinbefore indicated, or if the deceased be an unmarried minor, and there be no father or mother, *or if any of the aforementioned persons or beneficiaries shall fail to sue hereunder, by reason of death, disability or otherwise, within the time allowed by this act,* then in such case suit may be instituted and recovery had by the administrator or executor of the deceased and the amount recovered shall be distributed according to the laws of descent." It should be instantly apparent, we think, that, by adding the above italicized words to the statute as enacted by the Legislature (as plaintiff would have us do by way of construction), we would be giving a new and different meaning to the statute as originally enacted, thereby substituting our own judgment of what the Legislature intended to say for the intent which the Legislature itself expressed in clear and unambiguous language in the statute as enacted. This the courts cannot do. Such action would amount to judicial legislation and would be an invasion of the legislative prerogative accorded to the General Assembly by our State Constitution.

But plaintiff says, if he cannot maintain this action, then defendant must go unpunished for its negligent acts (if such be proved), although the primary object and purpose of the act is to punish for causing death by negli-

gence; that such interpretation of the statute places a premium on negligence. However that may be, nevertheless, as is well said in Clark v. Railroad Co., 219 Mo. l. c. 541: "We think learned counsel has mistaken the source of the power to correct evils, if any, in the statute. He should go to the Legislature and request that body to enlarge the remedy and make it flexible and broad enough to include cases within the hardships put by him in the case at bar, and see what the lawmaker says; for it seems sensible that the lawmaker should first write the law, and not, we. To us the maxim applies: *Jus dicere et non jus dare.*"

Furthermore, we must rule the instant case upon the precise facts and the precise parties now before us and not upon hypothetical facts and hypothetical (and different) parties not now before us; and so we rule this case. It is clear to us that the statute in question does not bestow upon the personal representative of the deceased the right to maintain an action for her alleged wrongful death if and when (as here) her husband survived her, even though he was never physically or mentally capable of commencing, or authorizing the commencement of, an action for her wrongful death. If, after the death of her husband, there were any right of action in any other party for the death of Jennie Baker (which question we do not find it necessary to rule in this case), it is clear to us that such right of action was not vested by the statute in her personal representative, i. e., in the plaintiff administrator of her estate, under the facts as shown by the record in this case. *Quaere,* since the case of State ex rel. Thomas v. Daues et al., supra, was ruled by this court, would the personal representative of Charles Baker have succeeded to Charles Baker's right of action for the wrongful death of his wife, had such personal representative brought an action within the period of one year after Jennie Baker's death? That question we do not rule in this case because it does not confront us.

It stands admitted in the instant case that Jennie Baker was survived by her husband. Under the wrongful death statute in question, he fell within the first class of beneficiaries who are given the right to sue and to maintain an action thereunder. A right of action sprang up, or vested, in him, under and by virtue of the statute, immediately upon the death of his wife. The right of action thus given by statute to the husband for his wife's death is dependent solely upon his surviving his wife, and not upon the commencement, or time of commencement, of a suit by him (unless, of course, there be a minor child or children, when the husband must sue within six months after the wife's death). His failure to sue, whether by reason of death or otherwise, does not revest the right of action in the wife's personal representative, who is the plaintiff in this action. We have endeavored, by reason of the newness of the question before us and its importance to both the bar and judiciary of the State alike, to analyze and harmonize the decisions of our own courts bearing thereon (perhaps at too great length), and have arrived at the inescapable conclusion that, upon the record before us, plaintiff has no right to maintain the instant action.

It follows that the judgment *nisi* must be reversed outright, and it is so ordered. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.