Patricia NELMS, a Minor, by Kenneth Nelms, her Father and Natural Guardian, Appellant,

v.

Stanley BRIGHT, Respondent.

No. 45130.

Supreme Court of Missouri.

En Banc.

March 11, 1957.

Tom Brantley Mobley, Kennett, and Glennon T. Moran, St. Louis, for appellant.

Blanton & Blanton, Sikeston, for respondent.

STOCKARD, Commissioner.

This action for $15,000 compensatory damages was instituted by Patricia Nelms for the wrongful death of her mother, Syble Marie Nelms, who met her death on November 15, 1952, as the result of an automobile collision. Suit was not filed by the surviving husband within the prescribed time and plaintiff, who alleges in her petition that she "is a minor daughter of the deceased," brought this suit within one year. The petition makes no reference to other minor children.

On March 13, 1954, more than one year before this case went to trial, defendant filed a motion to dismiss the petition in which he alleged that Syble Marie Nelms left two minor children surviving her, and that the failure of both minor children to join in the suit was a defect of parties plaintiff; that it resulted in a nonjoinder of an indispensable party; and that the suit was not brought by the real party in interest. This motion was overruled on July 12, 1954, "because of being filed out of time," and on August 10, 1954, defendant filed an amended answer in which he preserved all the objections set forth in the motion.

At the trial, starting April 6, 1955, plaintiff's testimony established that James R. Nelms, the driver of the automobile in which Syble Marie Nelms was riding when she received the injuries resulting in her death, was a brother of plaintiff, and that he was a minor at the time of his mother's death, although he reached his majority prior to the time suit was filed. James was present at the trial and testified on behalf of plaintiff. At the conclusion of plaintiff's evidence the trial court directed a verdict for defendant for the reasons that there was a "defect of parties plaintiff" and that plaintiff failed to make a submissible case. Plaintiff filed a motion for new trial and in the alternative requested the court to set aside the verdict and grant her leave to join her brother as a party to the action. The trial court made no ruling on this motion, and pursuant to Section 510.360 (all statutory references are to RSMo 1949, V.A.M.S.) it was deemed overruled at the end of ninety days. Plaintiff has appealed.

An action for wrongful death was not cognizable at common law. Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889. Thus it is only by virtue of the wrongful death statutes that any claim or cause of action accrues to the persons named in Section 537.070. Plaza Express Company, Inc., v. Galloway, Mo.Sup., 280 S.W.2d 17. (All references to the wrongful death statutes are to the provisions as they existed prior to the amendment in 1955, see Laws of Missouri 1955, p. 778, unless otherwise stated.) "A party suing under the [wrongful death] statute referred to must bring himself in his pleading and proof strictly within the statutory requirements necessary to confer the right. Otherwise his petition states no cause of action, and his proof is insufficient to sustain his judgment. Only such persons can recover (and in such time and in such manner) as the letter of the law prescribes. Only such persons may sue as the statute permits, and they alone can sue. * * * It must 'be conceded that the section reserves to itself the exclusive power of naming those who can maintain the action and of fixing the time in which each of the enumerated persons could sue.' " Chandler v. Chicago & Alton Railroad Company, 251 Mo. 592, 600–601, 158 S.W. 35, 37. See also, Bonnarens v. Lead Belt Railway Company, 309 Mo. 65, 273 S.W. 1043; Betz v. Kansas City Southern Railway Company, 314 Mo. 390, 284 S.W. 455; O'Donnell v. Wells, 323 Mo. 1170, 21 S.W.2d 762.

The wrongful death statute creates but one indivisible cause of action which remains the same whether enforceable by the surviving spouse, by the minor child or children, or by the others named in the statute. Cummins v. Kansas City Public Service Company, 334 Mo. 672, 66 S.W.2d 920; Fair v. Agur, 345 Mo. 394, 133 S.W.2d 402. The cause of action in this case accrued at the time of the death of Syble Marie Nelms. Cummins v. Kansas City Public Service Co., supra; Fair v. Agur, supra. It was not appropriated by the surviving husband within the period authorized by the statute, and the right to maintain the suit then passed to "the minor child or children" of the deceased. Section 537.070. This means that when the deceased is survived by one minor child the suit may be maintained by him, but if the deceased is survived by two or more minor children, the right to maintain the suit is in "the minor * * * children". The right of James to bring suit as a· minor child was not lost for the reason that he reached his majority after the cause of action accrued. Rutter v. The Missouri Pacific Railway Company, 81 Mo. 169.

Neither minor child has a separate interest in the compensation authorized by the wrongful death statute which he or she may sue for, alien, or release prior to the rendition of the judgment therefor. See Herrell v. St. Louis-San Francisco Railway Company, 324 Mo. 38, 44, 23 S.W. 2d 102, 104, 69 A.L.R. 470, where this rule is announced concerning the interest of the father in the penalty authorized by the wrongful death statute. In Clark v. Kansas City, St. Louis & Chicago Railroad Co., 219 Mo. 524, 118 S.W. 40, 45, suit was brought under the penalty provision of the wrongful death statute by the mother. The statute then authorized the suit to be brought by "the father and mother". In support of the conclusion that the father and mother both must join, this court said: "As the clear law reads, this defendant must pay in a specified case, to wit, when the father and mother join in the suit prior to judgment * * *. Shall we write into it [the statute] by construction an added provision, to wit, that the wrongdoer is not only liable in cases put by the statute itself, but is also liable in any case where one of two parents *or one of a family of minors* * * * is alone willing to sue for the penalty? Is it the statutory scheme that the wrongdoer should pay to one what the statute ordains should go to both parents, *or all the minors?* Or must he pay in full what all are not willing to receive? Or if he is to pay only part,

what part shall it be? The statutory penalty is indivisible, and all of it or none must be sued for." (Italics added.) The quoted language pertaining to the necessity of all minor children to join in the suit is dictum, but we agree with the statement, and we see no reason to distinguish what was there said in reference to a suit under the penalty section from a suit under the compensatory section. The provision pertaining to those who are entitled to maintain the suit is the same. In this case "the minor * * * children" have a joint claim, and all must be made parties. 25 C.J.S., Death, § 57. See also Sharp v. Missouri Pacific Railway Company, 213 Mo. 517, 523, 111 S.W. 1154, 1156, where the question of defect of necessary parties plaintiff in a suit for wrongful death is discussed in connection with the contention that the petition did not allege that plaintiffs constituted all of the minor children of the deceased.

Prior to the above referred to amendment of the wrongful death statute in 1955, suit for the wrongful death of an unmarried minor child was authorized to be brought by "the father and mother". It was consistently and repeatedly held that the statute as then worded vested in the father and mother a joint cause of action in which both, if living, must join. Clark v. Kansas City, St. Louis & Chicago Railroad Co., supra; Herrell v. St. Louis-San Francisco Railway Company, supra; Heath v. Salisbury Home Telephone Company, 326 Mo. 875, 33 S.W.2d 118; Reynolds v. Thompson, Mo.Sup., 215 S.W.2d 452, 2 A.L.R.2d 785; Clark v. Kansas City, St. Louis & Chicago Railroad Co., 153 Mo.App. 689, 135 S.W. 979. Plaintiff attempts to distinguish these cases for the reason that, unlike the statute pertaining to the right of minor children to maintain the action for wrongful death of a parent, the statute which authorized suit by the father and mother for the wrongful death of an unmarried minor child provided that the father and mother should have an "equal interest in the judgment". The absence of such a provision in the statute pertaining to the right of the minor children to sue does not indicate that the cause of action is not joint. The cause of action is given to all the minor children, and only one judgment in a lump sum can be obtained.

By plaintiff pleading no more than that she "is a minor daughter of the deceased," and by her proof that James was also a minor at the time of the death of her mother, she has not brought herself by pleadings or proof within the statutory requirements necessary to confer the right to maintain this action, and the trial court correctly directed a verdict for the reason that there was a defect of necessary parties plaintiff.

Plaintiff urges that if the ruling of the trial court that there was a defect of necessary parties was correct the judgment should be reversed and remanded with leave to amend the petition because she otherwise made a submissible case. We shall review the evidence to determine if a submissible case was made, and if we so find we shall then consider whether, under the circumstances of this case, the cause should be remanded with leave to amend the petition.

Plaintiff pleaded primary negligence, and she contends that she made a submissible case as to her allegations of negligence on the part of defendant in that he "failed to stop his automobile, when in the exercise of the highest degree of care, he would so have done;" that the defendant "operated his automobile at a high and dangerous rate of speed under the circumstances;" and that the defendant "failed to slacken the speed of his automobile, when in the exercise of the highest degree of care he would so have done." Where several grounds of negligence are alleged, a motion for a directed verdict for the defendant should be overruled if plaintiff made a jury case on any of the alleged grounds. Ruby v. Clark, 357 Mo. 318, 208 S.W.2d 251. In determining if plaintiff

made a case for the jury we must consider all of plaintiff's evidence in the light most favorable to her contentions, Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, and accept that evidence as true when it is not entirely unreasonable or opposed to physical laws, and we must give plaintiff the benefit of favorable inferences arising from the evidence. O'Shea v. Pattison-McGrath Dental Supplies, Inc., 352 Mo. 855, 180 S. W.2d 19; Holmes v. McNeil, 356 Mo. 763, 203 S.W.2d 665.

James, Patricia and their mother left St. Louis, Missouri about one or two o'clock in the morning of November 15, 1952 to go to Brookland, Arkansas in a 1940 Chevrolet driven by James. By five o'clock they were a few miles north of Dexter in Stoddard County on Highway 25, and it was then "just getting daylight." They had driven through rain earlier, and it had been "foggy in spots." As James approached the place of the accident he was proceeding southward at about 20 to 25 miles an hour, and was following two vehicles, the first of which was a truck, and a vehicle was following him. The car immediately in front of James passed the truck, and James then moved his car forward closing the gap between his car and the truck. He pulled up to "within approximately five feet of the truck," and when he "saw there was nothing coming," he "pulled over" into or "cut into the left-hand side of the road" to pass. When his car was "approximately even" with the truck, that is, his car and the truck were "abreast," he saw the headlights of a car "coming out of the fog" and he realized that he could not pass the truck "in time." He then took his foot off the accelerator, tried to slow down and get back into the right-hand side of the highway, but the car behind him had pulled up close to the truck and he could not get back into the right-hand lane, so he "slammed on the brakes and cut the wheel to the left." The right side of his car was struck almost immediately by defendant's car. Defendant was not at any time on the wrong side of

the highway, and at the time of the collision James' car completely blocked the east lane. Between 50 and 80 feet south of the point of collision, in the direction from which defendant was traveling, there was a bridge with heavy concrete "bannisters" three or four feet high which spread out at the ends of the bridge to the width of the shoulder on each side.

When James first saw the headlights of defendant's car it was beyond the bridge, and he could not see the car itself because of the fog. He estimated that he could see the lights of defendant's car about 600 feet away. His estimate of the speed of defendant's car was that "it was going at a rather fast rate of speed, I would say, now that I have thought it over a great deal since the time of the accident, 55 or 60 miles an hour, maybe 50."

Plaintiff's evidence included a pre-trial statement made by defendant in which he gave the following version of the accident. Defendant was driving north on Highway 25 in a 1952 Chevrolet. At the time he saw the car operated by James pull out from behind the truck into the east lane of the highway he was going about 45 or 50 miles per hour and the two cars were about one-quarter of a mile apart. When the defendant saw that James could not get by the truck he then began "applying" his brakes, and at that time he was "400 or 500 feet before the bridge, probably it was about 500 feet before the bridge." Defendant could not estimate the speed of James' car, and when James tried to turn off the highway his car began turning sideways. The front end of defendant's car struck James' car at the right door and there was "quite an impact."

■■■■■ It has been said that in the exercise of the highest degree of care a motorist need not slow down or stop merely because he sees another car approaching on his side of the road. 60 C.J.S., Motor Vehicles, § 317. However, when he has knowledge or by the exercise of the high-

est degree of care should have knowledge, that the driver of the car advancing toward him on the wrong side of the road is unable or is not intending to move to the right or to a position of safety, and when he knows or should know that if the approaching driver does not change his position a collision will likely occur, then he must take all reasonable precautions to avoid a collision. McGuire v. Steel Transportation Co., Inc., 359 Mo. 1179, 225 S.W.2d 699; Lemonds v. Holmes, 241 Mo.App. 463, 236 S.W.2d 56; Shaw v. Wilcox, Mo.App., 224 S.W. 58; 60 C.J.S., Motor Vehicles, § 317. The general rule that a motorist traveling to the right of the centerline of the highway, has a right to assume that the driver of an approaching car will exercise due care and operate his automobile so as to yield that part of the highway which is to the right of the centerline does not necessarily exonerate the motorist if a collision results because these rules of the road do not confer absolute rights, but they impose reciprocal duties which may be qualified by the circumstances. McGuire v. Steel Transportation Co., Inc., supra.

 In this case defendant saw James' car on the wrong side of the road when the cars were 1,320 feet apart. We cannot say that any precautionary acts were then required of him. But when the defendant was more than 550 feet from the approaching car (we say more than 550 feet because the length of the bridge is not shown and during the time that defendant traveled northward to the point of the collision James was driving his car, apparently at a slower speed than that of defendant, southward to the point of collision) he not only could have seen but did actually see that "he (James) could not get by" the truck. Therefore defendant knew that unless he stopped or slackened his speed substantially so that James would have time to let the truck get past him, James could not move over into his proper lane. Defendant was traveling 45 or 50 miles an hour and there is no evidence of

stopping distance. While we cannot take judicial notice of the exact distance within which a certain automobile may be stopped under given conditions, McCombs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135; Mallow v. Tucker, Mo.Sup., 281 S.W.2d 848, there have been instances in which we have .taken notice of certain limits within which a stop could be made. Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694; Mallow v. Tucker, supra. See also Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, where this court said that in the circumstances of that case "we have no hesitation in saying that, if the respondent's automobile was traveling 45 to 50 miles per hour, it could have been stopped within the 300 to 350 foot distance lying between it and the appellant when the latter began to make the left turn." We need not consider if under the circumstances defendant should have at an earlier time appreciated that James' position required precautionary measures on his part, because when we take into consideration the distances here involved, the speed of defendant's automobile and the reaction time of defendant, we think there was a jury case on the ability of the defendant, after he actually saw that James was "trapped" on the wrong side of the highway between the truck to his right and defendant's oncoming car, to stop his car short of the point of collision or to slacken his speed sufficiently to have avoided the collision, and whether under the circumstances the failure of defendant to slacken his speed to a greater degree or to stop constituted negligence.

Under the circumstances we have here, should the judgment be reversed and the cause remanded? Since plaintiff's evidence did present a submissible case, for the purpose of the present discussion the situation is somewhat analogous to those cases where plaintiff obtained a judgment in an action for wrongful death, but on appeal it was determined that by both pleading and proof the plaintiff did not establish that he was entitled to maintain the action. See

Lee v. St. Louis Public Service Co., 337 Mo. 1169, 88 S.W.2d 337; O'Donnell v. Wells, 323 Mo. 1170, 21 S.W.2d 762; Colvin v. Gideon & North Island Railroad Co., Mo.App., 200 S.W. 715; Lynch v. St. Louis Public Service Co., Mo.App., 261 S.W.2d 521. In each of these cases, either in the order reversing the judgment and remanding the cause or in the opinion, it was stated that the petition could be amended. In Wente v. Shaver, 350 Mo. 1143, 169 S.W.2d 947, 145 A.L.R. 1176, the executrix of the deceased filed suit for wrongful death in the circuit court of the City of St. Louis. The petition was defective in that it did not negative a surviving husband. A plea in abatement was sustained, apparently on the ground that both plaintiff and defendant were residents of St. Louis County, and plaintiff took a voluntary nonsuit. Plaintiff then filed the petition in St. Louis County, and at the end of her case she took an involuntary nonsuit. On appeal this court held that both petitions were of "sufficient validity to at least be amended," and the judgment was reversed and the cause remanded.

 Apparently in the above referred to cases it was not necessary to add additional parties. However, in this case plaintiff must do so. In Cytron v. St. Louis Transit Co., 205 Mo. 692, 104 S.W. 109, it was held that a proper plaintiff could, before trial, in a suit for wrongful death amend his petition after the statute of limitations had run to bring in a necessary party plaintiff. See also Russell v. Nelson, 317 Mo. 148, 295 S.W. 118; and Gresham v. Talbot, 326 Mo. 517, 31 S.W.2d 766. In discussing the right to amend pleadings to add or substitute parties after the statute of limitations had run this court stated as a general rule that "One having a joint interest may be added as a party plaintiff and the joinder will relate back to the original institution of the action". Webster v. Joplin Water Works Co., 352 Mo. 327, 177 S.W.2d 447, 453. If plaintiff is otherwise entitled to have this cause remanded, the fact that she must add her

brother as a party who has a joint interest with her in the cause of action will not prevent a remanding of the cause.

 Defendant contends the cause should not be remanded because plaintiff was apprised of the defect of parties long before trial, and that when she voluntarily proceeded alone she "waived" any right to bring her brother in after disposition of the case in the trial court. Defendant cites Smith v. St. Louis Public Service Co., 364 Mo. 104, 259 S.W.2d 692. In that case the plaintiff pleaded both primary and humanitarian negligence. After introducing evidence in support of both theories of negligence he voluntarily submitted his case to the jury on only humanitarian negligence. On appeal the humanitarian submission was held improper and this court refused to remand the cause for retrial on the pleaded specific negligence. The court held that the plaintiff, in voluntarily abandoning his primary negligence assignments did so to secure the strategic advantage of avoiding the hazard of meeting the defense of contributory negligence, and that when a party weighs the hazards and consequences, and voluntarily chooses a course of action for reasons of trial strategy, he is not entitled to have the cause remanded for trial on an abandoned theory. See also Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 172 S.W.2d 835.

 It is obvious that in this case the plaintiff attempted to maintain this suit without her brother in an effort to obtain the strategic advantage of not presenting to the jury the situation where her brother would be seeking compensation from the defendant for the death of his mother when his negligence unquestionably was a contributing cause. Plaintiff was aware of the contention of defendant that he was not liable to plaintiff alone, but if liable at all then only to plaintiff and her brother jointly. Except for the circumstances hereafter mentioned, we would not be inclined to remand this case so that she "may experiment with different theories of [her] ad-

versary's liability." See Borrson v. Missouri-Kansas-Texas R. Co., supra, 172 S. W.2d loc. cit. 850. However, in this case when the trial court overruled the defendant's motion to dismiss on the ground that plaintiff alone was not entitled to maintain this suit, it did so for the stated reason that defendant's objections were "filed out of time." If this were true, which we think not, then the same objections incorporated in the answer and urged in defendant's motion for a directed verdict were also "out of time." The trial court unquestionably led plaintiff to believe that because defendant had not timely objected, she had the right to proceed alone with her suit. But, at the end of her evidence without any notice to her that he had arrived at the opposite conclusion concerning her right to proceed alone, the trial judge directed a verdict against her because of a "defect of parties plaintiff," and did not afford her an opportunity to amend her petition before doing so. After judgment was entered on the directed verdict, plaintiff sought to have it set aside to permit her to amend her petition and include her brother as a party, but this was denied.

There is nothing in the record to show that defendant would have been prejudiced in any way by permitting plaintiff to amend her petition to add her brother as a party. In fact this would have been in accord with defendant's demand, and the amendment would have been supported by plaintiff's evidence and by the evidence brought out by defendant on cross-examination. In Robinson v. Unit Iron Co., Mo.App., 31 S. W.2d 232, it was held that where the trial court induced the plaintiff to try his case on a wrong theory, to which a demurrer was sustained on appeal, the cause should be remanded. This situation was recognized as an exception to the ruling in Borrson v. Missouri-Kansas-Texas R. Co., supra, 351 Mo. 229, 172 S.W.2d 835, 850. While there is nothing here to show that the trial court "induced" plaintiff not to

join her brother, still the trial court ruled that she could proceed alone and permitted her to proceed to trial on that theory. Of course it was not the duty of the trial court to guide plaintiff in presenting her case, but after ruling that plaintiff could proceed alone, it should have afforded her an opportunity to amend her petition and join her brother as a party, if she so desired, before cutting her off with a directed verdict. If plaintiff had elected to stand on her petition after being advised by the trial judge that he had changed his opinion, we would have an entirely different case. But if plaintiff, upon being so advised, had then amended her petition to include her brother as a party, we would have no hesitancy in saying that defendant was not prejudiced thereby, and the only issue then on this appeal would be whether a submissible case had been made by the evidence.

For the reason that under the unusual circumstances of this case we believe plaintiff should have been afforded an opportunity to amend her petition after the trial judge changed his ruling that the objections of defendant were not timely filed, and for the reason that plaintiff did seek to amend her petition after judgment to include her brother as a party, we reverse the judgment and remand the cause so that plaintiff may, if she is so advised, amend her petition.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

Adopted as the opinion of the Court En Banc.

All concur, except WESTHUES and LEEDY, JJ., who dissent.